No. 26,926.

THE STATE OF KANSAS, *Appellee,* v. LOUISA FAIL, *Appellant.*

SYLLABUS BY THE COURT.

1. PERJURY — *Materiality of Testimony — Test of Materiality.* In order for false testimony at a trial to be material to the issue, so as to support a charge of perjury, it need not bear immediately and directly upon the ultimate fact to be proved. It is material if it throws light upon any relevant collateral matter, such for instance as the truth of testimony concerning details adapted to give plausibility to the story of a witness. And the materiality of the false testimony is to be determined in view of conditions at the time it is given, although subsequent developments may deprive it of any substantial bearing upon the ultimate question to be decided. Thus perjury may be assigned with respect to testimony concerning the whereabouts at a particular time of one charged with crime, although it may fail utterly to establish an alibi by reason of important intervals not accounted for.

2. SAME—*Testimony Tending to Establish Alibi in Rape Prosecution.* In a trial upon a charge of statutory rape, where the complainant told of a series of acts of sexual intercourse over a period of some six weeks preceding that relied upon for conviction, and said the defendant during that time was living elsewhere than with his wife, and promised to marry her when he got a divorce, it is held that perjury was properly assigned with respect to false testimony by his wife (who said she and her husband had been living together practically all the time since their marriage), that about a week before the act for which he was prosecuted he had visited a neighboring town with her, spent the night there, and on the next morning accompanied her on a shopping trip, paying for a dress and other articles which she bought.

Appeal from Edwards district court; CHARLES E. VANCE, judge *pro tem.* Opinion filed November 6, 1926. Affirmed.

*L. A. Madison,* of Dodge City, and *A. L. Moffat,* of Kinsley, for the appellant.

*C. B. Griffith,* attorney-general, *Elrick C. Cole,* of Great Bend, and *H. F. Thompson,* of Kinsley, for the appellee.

The opinion of the court was delivered by

MASON, J.: Louisa Fail appeals from a conviction on a charge of having committed perjury while testifying as a witness in behalf of her husband, A. W. Fail, at a trial in which he was convicted of having had sexual intercourse with Ruth Connelly, a girl under

Perjury, 32 Cyc. pp. 1419 n. 55, 1420 n. 70; 21 R. C. L. 260.

eighteen years of age. The testimony on which perjury was assigned was substantially to this effect:

The present defendant and her husband were in Larned together on the evening and night of September 5, 1923, and on the morning of the sixth. She did some shopping at about half past nine that morning and bought goods for which he paid, giving his check (which was introduced in evidence at the trial of the rape case).

It was sufficiently proved that she gave this testimony and that it was false; that her husband was not with her at Larned at the time stated, and that the check referred to had originally been signed by her in her own name, but after it had passed through the bank had been altered by the erasure of her signature and the substitution of that of her husband. A reversal is asked upon the ground that the false testimony was not material to the issue on trial in the rape case.

To support a conviction of perjury the false statements relied upon need not bear directly upon the ultimate fact to be determined. "It is sufficient that they relate to any collateral matter upon which evidence would have been admissible." (*State v. Adams,* 119 Kan. 509, 511, 240 Pac. 955.) Mere details introduced with the apparent purpose of giving verisimilitude to a narrative are material. "For a witness knowingly to fabricate details, in order to strengthen his credibility, is as much perjury as is any other false swearing. Hence it has been rightly held that perjury may be committed in swearing falsely to a collateral matter with intent to prop the testimony on some other point." (2 Wharton's Criminal Law, 11th ed., § 1541.) "Thus, falsehood in the statement of collateral matter, not of substance, such as the day in an action of trespass, or the kind of staff with which an assault was made, or the color of clothing or the like, may or may not be criminal, according as they may tend to give weight and force to other and material circumstances." (21 R. C. L. 260.)

The state contends that the testimony on which perjury is assigned was in the nature of a partial alibi; that it had some tendency to discredit the story told by the complainant in the rape case by showing the defendant therein to have been elsewhere at the time of the act of intercourse relied upon for conviction, or of some of the other similar acts narrated by her to show the previous relations of the parties. If such is the case the testimony would not be rendered immaterial by the fact that unfilled gaps were left in the alibi.

"Whether all the links in the chain of circumstantial evidence necessary to its completion are supplied or not, a witness who has sworn falsely in regard to any link is as guilty as if the evidence fully supplied that and all the other parts." (*State v. Wakefield,* 73 Mo. 549, 554.) The materiality of false testimony must be tested by conditions as they stood at the time it was given, not by those existing when the case is finally submitted. (30 Cyc. 1419; *Beavers v. State,* 124 Ark. 38. See, also, *Wood v. People,* 59 N. Y. 117.)

In the rape case the time of the act of intercourse relied upon for conviction was definitely fixed by the complainant at September 13, 1923, although it developed she had at one time described it as having occurred about September 10. She testified that a number of other similar acts took place at various times, the exact date being given in but a few cases, of which the earliest was July 29, 1923. Evidence of this kind was admissible and material as showing the relations of the parties prior to the act on which the prosecution was based. (*State v. Brown,* 85 Kan. 418, 116 Pac. 508.) Referring to instances of intercourse in Edwards county, she was asked: "Most of them were in what month?" She answered: "They were in August and the first part of September." This was fairly to be interpreted as implying that there were a number of instances in the early part of September. It was shown that no sexual act except the one on the thirteenth took place later than the ninth, and that on the sixth Fail had left on a trip to Ulysses. This with other evidence practically reduced the time for any other acts in September to the nights from the first to the fifth, inclusive. The testimony of Mrs. Fail that her husband was with her at Larned on the evening and night of the fifth therefore tended to show that no act of intercourse took place in September prior to the thirteenth, unless on the first, second, third or fourth. If this had been followed with a showing of no intercourse on any of those four days an alibi would have been established as to any copulation in September excepting on the thirteenth, and the complainant would have been discredited to that extent. The failure to fill this considerable gap can hardly be regarded as making the testimony of Mrs. Fail immaterial in such sense that perjury could not be assigned with respect to it.

But the case need not be rested on these considerations. During the period covered by the acts referred to the complainant in the rape case lived at Trousdale, in Edwards county, near the south line. She testified in effect that Fail, before gaining her consent to his having

sexual intercourse with her, promised to get a divorce and marry her; that he brought an action for divorce a few days later; that "he stayed in Trousdale the biggest share of the time after he sued for divorce until he left"; that he "boarded and roomed at the restaurant mostly." Another witness testified that Fail stayed with him in the latter part of July, 1923, "in fact from the time he left his wife." Mrs. Fail testified that she lived on a farm a few miles from Trousdale—had lived there with her husband ever since their marriage except for a year spent in Belpre; that she and her husband had lived together practically all that time since their marriage; that he had never been away from home for any length of time.

In view of the story told by the complainant in the rape case the relations between Fail and his wife became a matter of considerable importance. A showing that they were living together on friendly terms would tend to discredit the girl's version of her own relations with him. Mrs. Fail's testimony that her husband was with her at Larned on the evening and night of September 5, and the next morning went shopping with her and paid for her purchases—"a dress and a few other little things"—had an obvious tendency to establish that fact, and within the general rules already stated was material to the matter on trial.

The judgment is affirmed.