No. 31,327

THE STATE OF KANSAS, *Appellant*, v. ELLIS WHITLOCK, *Appellee*.

(27 P. 2d 262.)

Opinion filed December 9, 1933.

*Roland Boynton*, attorney-general, *E. E. Steerman*, assistant attorney-general, *James P. Coleman*, county attorney, and *I. M. Platt*, special prosecutor, for the appellant.

*Elisha Scott* and *James A. Davis*, both of Topeka, for the appellee.

The opinion of the court was delivered by

THIELE, J.: This is an appeal from an order quashing an information charging perjury alleged to have been committed by the defendant in falsely stating in an affidavit made by the defendant to the Kansas soldiers' compensation board, for the purpose of obtaining compensation, that he had not applied for any compensation from any state or country for service in the world war, when in truth and in fact he had applied for and received compensation from the state of Illinois, the question having been properly reserved by the state.

The statute defining perjury is R. S. 21-701, and recites as follows:

"Every person who shall willfully and corruptly swear, testify or affirm falsely to any material matter, upon any oath or affirmation or declaration legally administered in any cause, matter or proceeding before any court, tribunal or public body or officer, shall be deemed guilty of perjury."

In support of the court's ruling, appellee urges that the claimed false statement was not given under an oath "legally administered"; that there is no provision of the statute requiring an oath in the particular circumstances here involved, and even if it be held that false answers to the class of affidavits here involved constitute perjury, the particular question and answer referred to in the information is not as to a material matter, there being only three questions involved in any bonus case: (1) The service of the applicant, (2) that he was a resident of Kansas at the time of entering the service, and (3) that he was honorably discharged.

Taking up first the question as to whether the oath was "legally administered," it will be observed that the act for compensation for veterans (Laws of 1921, ch. 255, appearing as R. S. 73-101 et seq., as amended) provides in R. S. 73-105:

"There is hereby created a board consisting of . . . who are hereby charged with the administration of this law, and who shall, within thirty days after the taking effect of this act, make, establish and publish rules and regulations providing for the proof of claims under this act, . . ."

Under this act, the board prescribed rules and regulations which included the form of affidavit having as a part thereof the question which it is claimed the defendant falsely answered. The rule with respect to whether an oath required by departmental regulation furnishes adequate basis for a charge of perjury is stated in 48 C. J. 843 as follows:

"Oaths required by regulation of a governmental department, without aid of statute, are not so far authorized by law as to furnish the foundation of a prosecution for perjury. But oaths required by departmental regulation pursuant to statute expressly or by necessary implication authorizing such regulation are so far authorized by law as to furnish adequate basis for a charge of perjury."

And see, also, 21 R. C. L. 255.

Defendant points out a number of instances where the statutes expressly require oaths in specific instances, and argues that, in the absence of a statute expressly denouncing the particular act here complained of, the oath was voluntary, and in support cites authorities upholding the general rule that perjury cannot be predicated on an oath which is not required by law. Among the cases cited is *United States v. George*, 228 U. S. 14, 33 Sup. Ct. Rep. 412, 57 L. Ed. 712, which charged perjury in connection with proof of homestead entry. The statutes required proof by two credible witnesses, not the claimant, and it was held that congress had provided the "exact measure" of the claimant's obligation and the department could not add to it. In *United States v. Smull*, 236 U. S. 405, 35 Sup. Ct. Rep. 349, 59 L. Ed. 641, however, it was held:

"A charge of perjury under U. S. Crim. Code, § 125, providing that 'whoever, having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered . . . shall willfully and contrary to such oath state or subscribe any material matter which he does not believe to be true, is guilty of perjury,' may be based upon false statements in an affidavit required either expressly by an act of congress, or by an authorized regulation of the general land office." (59 L. Ed. 641, headnote.)

And *United States v. George*, supra, was distinguished. See, also, *Maryland Casualty Co. v. United States*, 251 U. S. 342, 40 Sup. Ct. Rep. 155, 64 L. Ed. 297, and *United States v. Morehead*, 243 U. S. 607, 614, 33 Sup. Ct. Rep. 458, 61 L. Ed. 926.

Counsel cite no decisions of this court, nor has our search disclosed any, where the question here presented has been decided. It is apparent from the statute providing for compensation that the legislature intended to leave all machinery for carrying out the act to be supplied by the compensation board through rules and regulations. The very magnitude of the act precluded the board from examining personally each applicant for compensation, and even though it could have done so, we believe it was contemplated by the legislature that the right to compensation was to be determined by examination

under oath. The form of application prescribed contained not only a provision for verification by the claimant, but for his identification under oath of disinterested witnesses. Even if it be held that the statute did not expressly authorize a regulation requiring proof under oath, it was necessarily implied by the whole compensation act, and we hold that the regulation requiring proof to be made under oath was within the powers of the compensation board, and that a false answer to a material question contained in a duly verified application for compensation is a proper basis for prosecution for perjury as defined in the crimes act.

Did the question asked and the answer given refer to a material matter? There can be no doubt that under the compensation act three principal facts were to be found: That applicant was a resident of Kansas at the time of entering the service; that he served in the world war in some branch of the army, navy or marine corps of the United States prior to November 11, 1918; that he was honorably discharged therefrom. What constitutes materiality and the degree of materiality required is defined in 48 C. J. 833, as follows:

"A statement can be neither material nor immaterial in itself, but its materiality must be determined in accordance with its relation to some extraneous matter. False testimony relative to a nonexistent issue cannot be material. But any statement which is relevant to the matter under investigation is sufficiently material to form the basis of a charge of perjury. The test of materiality is whether a false statement can influence the tribunal—not whether it does.

"Contradiction of a material statement is itself necessarily· material.

"The degree of materiality is unimportant. False testimony directly pertinent to the main issue is of course material. But it is not necessary that the false statement should bear directly upon the main issue. It is sufficient if the statement is collaterally, remotely, corroboratively, or circumstantially material, or has a legitimate tendency to prove or disprove any material fact in the chain of evidence, even though not in itself sufficient to establish the issue. False testimony relative to a collateral matter may be perjury irrespective of the truth or falsity of the main fact at issue. But if the false statement is not even circumstantially material it cannot be perjury."

And the test of materiality is set forth in 21 R. C. L. 259:

"While it is necessary that the false testimony be material to the issue being tried or to the point of inquiry, it is not necessary that it be material to the main issue. The test is whether the statement made could have influenced the tribunal on the issue before it. It is sufficient if it is material to any proper matter of inquiry, and is calculated and intended to prop or bolster the testimony of a witness on some material point, or to support or attack the credibility of such a witness. It may be laid down as a general rule that any

testimony which is relevant in the trial of a case, whether to the main issue or some collateral issue, is so far material as to render a witness who knowingly and willfully falsifies in giving it guilty of perjury. It is but common knowledge that it frequently occurs in the trial of causes that inquiries are made of witnesses touching matters which do not directly concern the commission of the acts which constitute the offense, yet such inquiries and answers may be material and highly important to the end that the triers of the fact may properly and intelligently weigh the testimony in the cause. If it is so connected with the matter at issue as to have a legitimate tendency to prove or disprove some fact that is material by giving weight or probability to, or detaching from, the testimony of a witness thereto, it is sufficient and makes the testimony material. The degree of materiality is of no importance; for, if it tends to prove the matter in hand, it is enough, though it be but circumstantial."

And the matter has received attention in our own decisions. In *State v. Fail*, 121 Kan. 855, 250 Pac. 311, the first paragraph of the syllabus recites:

"In order for false testimony at a trial to be material to the issue, so as to support a charge of perjury, it need not bear immediately and directly upon the ultimate fact to be proved. It is material if it throws light upon any relevant collateral matter, such for instance as the truth of testimony concerning details adapted to give plausibility to the story of a witness. And the materiality of the false testimony is to be determined in view of conditions at the time it is given, although subsequent developments may deprive it of any substantial bearing upon the ultimate question to be decided. Thus perjury may be assigned with respect to testimony concerning the whereabouts at a particular time of one charged with crime, although it may fail utterly to establish an alibi by reason of important intervals not accounted for."

And in *State v. Adams*, 119 Kan. 509, 240 Pac. 955, it was said:

"It is of course not necessary in order to be material that the statements claimed to have constituted perjury should bear directly upon the ultimate fact to be proved. It is sufficient that they relate to any collateral matter upon which evidence would have been admissible." (p. 511.)

And the fourth paragraph of the syllabus in *State v. Hoel*, 77 Kan. 334, 94 Pac. 267, recites:

"In a prosecution for the crime of perjury the evidence charged to be false will be regarded as material if it tended to prove or disprove a material fact involved in the trial where the alleged perjury was committed, regardless of the effect which such testimony may have had in the case." (Syl. ¶ 4.)

One of the elements to be proved was claimant's residence in Kansas at the time he entered the service. It might well be that owing to the difference in the statutes of different states, a soldier would

be entitled to compensation from Kansas as well as some other state, and it might well be that the statutes were so nearly alike that he could not, honestly, receive compensation from Kansas and some other state, and it might also be the fact that he obtained compensation fraudulently from the other state and be legally entitled to it in Kansas, but the compensation board was entitled to a true answer to the question as to whether he had obtained such compensation from the other state. An affirmative answer would have enabled the board to make a full examination of the facts and the possible differences in statutory requirements; a negative answer, relied on by the board, closed the inquiry as to this phase of the matter. Even though the inquiry was collateral to the main issue, it bore directly on one of the elemental matters to be determined and was material to it. Any other conclusion would logically lead to this: The board could ask only the three main questions to be determined. If the legislature had intended that, it would not have said "make, establish and publish rules and regulations providing for the proof of claims under this act." (R. S. 73-105.)

The order of the trial court in sustaining the motion to quash the information was erroneous, and the cause is remanded with instructions to overrule the motion.

HUTCHISON, J., not sitting.