(No. 76772.—

# THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. LLOYD R. DAVIS, Appellee.

*Opinion filed January 26, 1995.—Rehearing denied April 3, 1995.*

McMORROW, J., joined by FREEMAN, J., concurring.
BILANDIC, C.J., dissenting.

Roland W. Burris, Attorney General, of Springfield, and Michael J. Waller, State's Attorney, of Waukegan (Norbert J. Goetten, William L. Browers and David A. Bernhard, of the Office of the State's Attorneys Appellate Prosecutor, of Elgin, of counsel), for the People.

Robert P. Will, Jr., and Thomas A. Briscoe, of Will & Briscoe, of Waukegan (Ralph A. Strathmann, of counsel), for appellee.

JUSTICE HEIPLE delivered the opinion of the court:

The defendant, Lloyd R. Davis, a/k/a L.R. Davis, was indicted in the circuit court of Lake County with eight counts of perjury based on statements he made during a discovery deposition in a civil libel suit. On the defendant's motion, the trial judge dismissed the indictment on the basis that the allegedly perjurious statements had not been before the trier of fact and, thus, were not material. The appellate court affirmed (No. 2—92—0593 (unpublished order under Supreme Court Rule 23)). We reverse.

The Criminal Code of 1961 defines perjury as follows:

> "(a) A person commits perjury when, under oath or affirmation, in a proceeding or in any other matter whereby law such oath or affirmation is required, he makes a false statement, material to the issue or point in question, which he does not believe to be true." 720 ILCS 5/32—2 (West 1992).

Although the instant case is a criminal prosecution, it is premised on a civil libel suit which defendant brought against Keystone Printing Service (Keystone) and Adrienne Drell. The complaint in the libel suit alleged that false statements regarding defendant's sexual activities were published in Keystone newspaper articles written by Drell. As part of that litigation, defendant gave a discovery deposition under oath. During the deposition, defendant was asked eight questions about his past sexual conduct. Defendant eventually settled the civil libel suit against Keystone and Drell without a trial. The allegedly false answers given in response to those questions form the basis of the perjury prosecution.

Defendant was indicted for eight counts of perjury under section 32—2 of the Criminal Code based on the eight questions and answers in his deposition. Defen-

dant moved to dismiss the indictment. At the hearing on the motion, Judge Stephen Walter, the trial judge in the civil libel suit, testified that he did not recall relying on the eight questions and answers in making any of his rulings. Judge Walter stated that he was not previously aware that any of the eight questions had been asked or answered until the hearing on the motion to dismiss the indictment. Thus, he could not have relied on these questions and answers. Although Judge Walter testified that the eight questions and answers were material to issues in the libel suit, the statements were not material to him, since he had not relied on them in making any of his rulings during the course of the litigation. The indictment was then ordered dismissed on defendant's motion.

The appellate court, relying on *People v. Mason* (1978), 60 Ill. App. 3d 463, affirmed the dismissal because the statements were not before the trier of fact. The appellate court opined that in order for the statements to be material, the trier of fact must be in a position to be influenced by them. Thus, since the eight questions and answers were not material to Judge Walter's rulings, they could not form the basis for a perjury indictment.

On appeal to this court, the State argues that the word "material" as used within the perjury statute refers to the relevance of the statements. The State asserts that the key analysis for materiality is whether the statements tend to prove or disprove any issue in the prior civil proceeding. The State also contends that there is nothing in the perjury statute which indicates that the statements must be before the trier of fact. We agree.

The language of the perjury statute does not require the alleged false statements to be before the trier of fact or anyone else. The law only requires that the statements be given under oath or affirmation in any type of

matter where the law requires an oath or affirmation; that they be false; that they be material to the issue or point in question; and that the person making the statements believes them not to be true.

Accordingly, we reverse the judgments of the trial and appellate courts and remand this cause for further proceedings consistent with this opinion.

*Judgments reversed;*
*cause remanded.*

JUSTICE McMORROW, concurring:

I agree with the majority's conclusion that the trial court erred in granting the motion of the defendant, Lloyd Davis, to dismiss the perjury indictments that had been returned against him. However, I write separately to express my belief that the decision in *People v. Mason* (1978), 60 Ill. App. 3d 463, upon which the trial and appellate courts relied, was misguided and wrong with respect to its determination of what constitutes materiality under our perjury statute. I also write separately to express my belief that *People v. Mason* should be expressly overruled by this court in this case.

The Illinois perjury statute states in pertinent part:

"Perjury. (a) A person commits perjury when, under oath or affirmation, in a proceeding or in any other matter where by law such oath or affirmation is required, he makes a false statement, material to the issue or point in question, which he does not believe to be true." (720 ILCS 5/32—2 (West 1992).)

Materiality is an essential element of the crime of perjury. In *Mason*, the court held that a false statement made in an evidence deposition was not "material" under our perjury statute, because the deposition was never used at trial. Contrary to the *Mason* court's analysis, however, materiality does not depend upon whether the false statement is used at trial: materiality is determined at the time of the making of the false state-

ment, and a statement may be perjurious even where it is not later introduced or used at trial. (*See United States v. Noveck* (1927), 273 U.S. 202, 206, 71 L. Ed. 610, 612, 47 S. Ct. 341, 342; *Mackin v. Illinois* (1885), 115 Ill. 312, 323.) An interpretation of "materiality" which recognizes that a statement may be perjurious, even though not submitted to or relied upon by a trier of fact or used at trial, is consistent with past precedent of this court and has been adopted by Federal and State courts.

Background

In September 1991, defendant, Reverend Lloyd R. Davis, was indicted in the circuit court of Lake County for the offenses of criminal sexual assault, aggravated criminal sexual abuse, child pornography, and perjury. Several months after the indictments were issued, Davis filed a motion to dismiss the perjury indictments (725 ILCS 5/114—1(a)(8) (West 1992)), arguing that the indictments did not state offenses under the Illinois perjury statute (720 ILCS 5/32—2 (West 1992)).

The perjury indictments alleged that Davis had given eight false answers in a discovery deposition that was taken as part of a civil suit that Davis had instituted in the circuit court of Lake County (Davis v. Keystone Printing Service, Inc., *et al.* (Cir. Ct. Lake Co.), No. 87—L—1347). In this civil suit, Davis claimed that he had been libeled by a series of articles written by reporter Adrienne Drell and published by Keystone Printing in an area newspaper. The articles allegedly accused Davis of having engaged in certain homosexual activities with members of his congregation. In his discovery deposition, Davis denied such activities. His denials formed the basis of the perjury charges later filed against him.

In support of his motion to dismiss the perjury indictments, Davis offered the testimony of Judge Stephen Walter of the circuit court of Lake County. Judge Walter stated that Davis' civil suit against Keystone

Publishing and Drell had been assigned to him in 1988 and remained on his call until it was dismissed in November of 1991 and that he had been aware that there was at least one discovery deposition given by Davis while he was presiding over the case. The deposition was brought to Judge Walter's attention when Drell filed a petition for sanctions under Rule 137 (134 Ill. 2d R. 137) asking for an award of fees for having to defend the action. The sanctions petition asserted, in essence, that Davis lacked good faith in pursuing the case when he knew that the allegations made in the newspaper report were true. However, Judge Walter struck the petition for lack of specificity with respect to the basis for the amount of fees requested, and Drell did not refile the petition. Judge Walter never ruled on the merits of the petition, and testified that he did not rely on Davis' discovery deposition in dismissing the petition for sanctions. The judge explained that the matters he ruled on consisted largely of discovery-related motions and motions *in limine* involving evidentiary issues.

The trial court allowed Davis' motion to dismiss the perjury indictments, believing that the dismissal was mandated by the holding in *People v. Mason* (1978), 60 Ill. App. 3d 463. The trial court judge stated that he was "astound[ed]" that *Mason* was the law in this State. Based upon *Mason*, the trial court felt constrained to dismiss the perjury indictment against the defendant and later denied the State's motion to reconsider its dismissal of the perjury indictment against the defendant.

The appellate court upheld the trial court's dismissal of the perjury indictments, relying upon the analysis in *Mason* to conclude that the discovery deposition was not material, because it had not been relied upon by Judge Walter in any of his rulings before the civil suit was dismissed. The State appealed.

Analysis

The focal point of Davis' argument in this appeal is the decision in *People v. Mason* (1978), 60 Ill. App. 3d 463. In that case, the defendant gave an evidence deposition that was important to the State's case in a separate criminal proceeding. Although the defendant was summoned to appear at the trial, and was ready to testify, he was not called as a witness and his deposition was never introduced at the criminal proceeding. The State later attempted to prosecute the defendant for allegedly false statements in his deposition. He was convicted of perjury and appealed.

The appellate court in *Mason* reversed the defendant's perjury conviction. The court held that, because the deposition was never used at the criminal proceeding, the defendant's false statements were not "material" to the proceeding. In so ruling, the appellate court in *Mason* reviewed Illinois case law on the meaning of the term "material." The court noted the general rule that the current test of materiality is whether the "false testimony has a natural tendency to influence the trier of fact." (*Mason*, 60 Ill. App. 3d at 466.) The court also noted that the "purpose of the perjury statute is, in part, to insure the validity of the fact-seeking process." (*Mason*, 60 Ill. App. 3d at 466.) The court concluded that since the deposition was not used at trial, the defendant's statements in his deposition were not "material," because they had not influenced the trier of fact in the criminal proceeding.

The court in *Mason* held that "Illinois courts have required not only a filing, but, as we believe, *use* of the sworn statement before a trier [of fact]." (Emphasis in original.) (*Mason*, 60 Ill. App. 3d at 468.) In my opinion, the ruling in *Mason* denigrates the purpose and sanctity of the oath, thwarts the discovery process and is an affront to an orderly system of justice.

Contrary to the ruling in *Mason*, the pertinent in-

quiry is not whether the fact finder was actually affected by the perjurious statements, but whether the statements *could have* influenced the finder of fact. Materiality is derived from the relationship between the proposition of the allegedly false statement and the issues in the case. (*People v. Harris* (1968), 102 Ill. App. 2d 335, 337.) Thus, the test of materiality for an allegedly perjured statement is whether the statement tends to prove or disprove an issue in the case. (See *Mackin v. People* (1885), 115 Ill. 312, 323; *People v. Toner* (1977), 55 Ill. App. 3d 688, 693; *People v. Beacham* (1977), 50 Ill. App. 3d 695, 700-01; King, *Perjury in Illinois*, 17 Ill. L. Rev. 596, 602 (1923).) A statement is deemed material when it did influence, or *could have influenced*, the finder of fact. (*People v. Briddle* (1980), 84 Ill. App. 3d 523, 527.) The *Mason* court erroneously focused exclusively on whether the challenged statements did actually influence the fact finder, and failed to consider whether the statements *could have* influenced a finder of fact.

Decisions from other jurisdictions have held that the materiality of a false statement is to be determined at the time the statement was made, and that the pertinent inquiry is not whether the statement did in fact influence the trier of fact, but whether it could have influenced the trier of fact. (70 C.J.S. *Perjury* § 13, at 262 (1987) (citing *Wattenmaker v. United States* (1929), 34 F.2d 741, *Wright v. State* (1941), 241 Ala. 529, 3 So. 2d 326, *State v. Fail* (1926), 121 Kan. 855, 250 P. 311, and *Commonwealth v. Lafferty* (1980), 276 Pa. Super. 400, 419 A.2d 518); see also Model Penal Code § 241.1(2), 10 U.L.A. 574 (1962) ("Falsification is material, regardless of the admissibility of the statement under rules of evidence, if it *could have* affected the course or outcome of the proceeding" (emphasis added)).) As one source has stated:

"The test of the materiality of a statement, as an essential element of perjury under federal or state law, is whether the false statement would or could influence a tribunal or jury on the issue before it. Alternatively stated, the test is not whether the false testimony did in fact influence a pertinent determination, but whether, viewed objectively, it directly or circumstantially had a reasonable and natural tendency to do so." (60A Am. Jur. 2d *Perjury* § 32, at 1088 (1988).)

"The materiality of false statements is to be determined with reference to the circumstances existing at the time the statements were made, without regard to subsequent events." 60A Am. Jur. 2d *Perjury* § 33, at 1090 (1988).

Thus, the crime of perjury is complete when the oath is taken and the false statement is made with the necessary intent. (*United States v. Norris* (1937), 300 U.S. 564, 574, 81 L. Ed. 808, 813, 57 S. Ct. 535, 539; *United States v. Noveck* (1927), 273 U.S. 202, 206, 71 L. Ed. 610, 612, 47 S. Ct. 341, 342.) With respect to allegedly false statements in an affidavit, the prevailing view is that "the offense [of perjury] is complete the moment the accused has signed and sworn to the false instrument with such intent, and it is immaterial that the affidavit is never used for the purpose intended or that it is not sufficient for such purpose." (60A Am. Jur. 2d *Perjury* § 45, at 1097 (1988).) The United States Supreme Court in *United States v. Noveck* (1927), 273 U.S. 202, 206, 71 L. Ed. 610, 612, 47 S. Ct. 341, 342, stated that "[t]he crime of perjury is complete when the oath is taken with the necessary intent, although the false affidavit is never used. [Citations.]"

In the case at bar, the libel action brought by Davis hinged on the truth or falsity of the newspaper articles. Thus, the "issue or point in question" at the time Davis made the purportedly false statement under oath was whether or not Davis engaged in the sexual conduct alleged in the articles. Davis' denials of such conduct were made during the course of discovery with respect to his

libel suit and were clearly material to the overriding issue in that litigation, *i.e.*, whether Davis had, in fact, engaged in the conduct which Drell and Keystone Printing had attributed to him. The materiality of Davis' allegedly perjured statements in his discovery deposition is readily apparent from the record. When Judge Walter gave his testimony before the circuit court, Judge Walter acknowledged that Davis' denials of homosexual activity were material to the issues raised by the pleadings in the libel suit, "to the extent that a primary issue in the complaint was the accuracy of a report that [defendant] had been involved in homosexual activity."

Davis' allegedly perjured statements in his deposition sought to justify his libel suit by refuting the veracity of the reports published by Drell and Keystone Press. Moreover, Davis' allegedly perjured statements were the basis for the petition for sanctions filed by Drell. Settlement of the libel suit may have been prompted by Davis' allegedly perjured statements in his deposition testimony. In light of these circumstances, Davis' allegedly perjured statements in his deposition were "material" to the libel suit, since the statements were critical to the proceedings and could have influenced the trier of fact if the case had gone to trial.

The oath is a crucial legal tool to insure that deponents and witnesses tell the truth. However, Davis' position, as well as the holding in *Mason*, devalue the significance of the oath and fundamentally undermine the entire truth-seeking process of our justice system. As this court has recognized, "[t]he law attaches superior effect to statements made under oath, and the [perjury] statute is designed to insure that all such statements merit the trustworthiness which the law assigns to them." (*Loraitis v. Kukulka* (1953), 1 Ill. 2d 533, 538.) "Our whole judicial system rests upon the assumption that sworn witnesses tell the truth." (King, *Perjury in*

*Illinois*, 17 Ill. L. Rev. 596, 601 (1923).) A person "who wilfully lies under oath should not escape punishment," simply because the false statement is never actually submitted to a trier of fact. King, *Perjury in Illinois*, 17 Ill. L. Rev. 596, 601 (1923).

Thus, I concur in the reversal of the appellate and trial court decisions. However, I find it desirable and necessary to express my view that the holding in *Mason*, that Illinois courts require the "filing" or "use" of an allegedly perjured statement before a trier of fact in order to conclude that the statement was material, should be overruled. A statement made under oath is material if it could have influenced the trier of fact with respect to an issue in the case. Under this rule, which is followed by the Federal courts and a majority of other jurisdictions, Davis' allegedly perjured statements in his deposition were "material" to his libel suit. I agree that the circuit court should have denied Davis' motion to dismiss the perjury indictments.

JUSTICE FREEMAN joins in this concurrence.

CHIEF JUSTICE BILANDIC, dissenting:

I would affirm, as a matter of public policy, the trial court's dismissal of the perjury counts against the defendant.

The instant prosecution arises from allegedly false answers that the defendant gave in a discovery deposition in June 1990. That deposition was given in a civil libel action that the defendant brought against Keystone Printing Service, d/b/a The News Sun, and a reporter for that paper. In the civil suit, the defendant claimed that he was libeled in a series of newspaper articles published in The News Sun. Ultimately, the libel action was dismissed by the parties pursuant to a settlement agreement in which the newspaper agreed to pay a sum of $50,000 to the defendant.

We infer from facts stated in the record that the instant perjury prosecution began shortly after the litigants settled the civil libel suit. Under the particular circumstances of this case, it appears that the perjury prosecution was brought at the behest of a litigant who was discontented with the outcome of litigation that he chose to settle. The allegedly false statements that underlie the instant perjury indictments were made in a *discovery* deposition, not an evidence deposition, and thus would not have been admissible at trial in the libel action. The trial judge who presided over the civil suit testified that he was not aware of any particular answers given in discovery depositions while he presided over the libel action. The trial judge also acknowledged that he did not rule on any substantive matters raised in the civil action, since the case was dismissed pursuant to a settlement agreement between the parties. The trial judge specifically confirmed that he could not have relied on the allegedly perjurious answers made in the discovery deposition in ruling on the libel action, since he was not aware at the time that such answers had been given.

Under the circumstances, one cannot help but wonder how the prosecuting attorney became aware of the allegedly perjurious statements that underlie the instant indictments. Even assuming that the prosecutor searched through all of the discovery depositions taken in all of the closed civil cases filed in Lake County, it is doubtful whether he could have found the statements which underlie the instant perjury prosecution, since it appears that the disputed deposition was never filed in the trial court. The unique facts of this case suggest that a civil litigant, dissatisfied with the outcome of litigation, informed the prosecuting attorney of an opponent's allegedly false deposition statements and demanded the instant perjury prosecution.

To avoid a plethora of such criminal prosecutions, our courts have wisely and consistently required not only the filing, but also use of a sworn statement by a decisionmaker—whether a judge, grand jury, jury or other tribunal—before that statement will be regarded as "material" within the meaning of the perjury statute. (See, *e.g.*, *People v. Mason* (1978), 60 Ill. App. 3d 463; *People v. Briddle* (1980), 84 Ill. App. 3d 523; *People v. Cantrell* (1979), 79 Ill. App. 3d 626.) The majority sets a dangerous precedent when it expands the definition of "materiality" to permit the instant prosecution to go forward. In the future, disgruntled litigants who are dissatisfied with the outcome of particular litigation will search interrogatories and depositions in closed cases for possibly perjurious statements, and then rush to the State's Attorney's office to demand perjury prosecutions against opposing parties and hostile witnesses. As a matter of public policy, I conclude that the valuable prosecutorial resources and court time should not be wasted in prolonging a dispute that formed the basis of a civil action which was closed pursuant to a settlement agreement between the parties. Accordingly, I dissent from the majority's conclusion that the trial court erred in dismissing the perjury indictments against the defendant.