THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHAYA L. JEFFERIES, Defendant-Appellant.

Fifth District    No. 5—98—0422

Opinion filed February 18, 2000.—Rehearing denied April 3, 2000.

Daniel M. Kirwan and Larry R. Wells, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Robert Haida, State's Attorney, of Belleville (Norbert J. Goetten, Stephen E. Norris, and Gerry R. Arnold, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HOPKINS delivered the opinion of the court:

Defendant, Chaya L. Jefferies, appeals from her conviction for two counts of mutilation of election materials (10 ILCS 5/29—6 (West 1996)). On appeal, defendant contends that she was not proven guilty beyond a reasonable doubt because the evidence at trial demonstrated that defendant did not sign the election materials. We reverse.

## FACTS

On August 22, 1997, defendant was charged by indictment with three counts of mutilation of election materials. The indictment asserted that defendant knowingly falsified address information on the 1995 voter registration cards of Montriett Boey, Dana Johnson, and Lisa Boey.

Defendant was tried by bench on May 19, 1998. At trial, the voter registration cards, introduced as exhibits by the State, indicated Dana Johnson's, Montriett Boey's, and Lisa Boey's names on the upper portion of the cards, and each card listed the address as "20 Loisel [sic] Drive" (20 Loiselle Drive), which is located in East St. Louis. In the lower portion of the card, the signature attested that the above statements were true. Defendant's boyfriend's, Michael Collins's, signature was listed as the registration officer on each card, and each card was

dated January 30, 1995. James Lewis, the executive director of the East St. Louis Board of Election Commissioners, testified that the voter registration card is used for registration and voting proceedings in East St. Louis, Illinois.

At trial, Lisa Boey testified that she had lived in St. Louis, Missouri, since 1993. Lisa stated that she never resided at 20 Loiselle Drive but that, upon the suggestion of defendant and Michael Collins, she voted by listing that address and served as an election judge in Loiselle Village in East St. Louis. Lisa testified that defendant told her she would receive a check from the election commissioner for being an election judge and the check would be sent to 800 Nobie Lane, East St. Louis, defendant's address.

Lisa further testified that she later read her name in a newspaper article concerning numerous voters who listed 20 Loiselle Drive as their address during the voting process. Lisa testified that she approached defendant concerning the article, but defendant told Lisa not to worry. Lisa testified that, upon leaving, defendant gave Lisa an affidavit to sign. The affidavit, offered into evidence, stated that Lisa resided at 20 Loiselle Drive on January 1995 and had since moved to the address of 800 Nobie Lane. Approximately one week later, defendant called Lisa to arrange a meeting with Michael Collins at defendant's 800 Nobie Lane address. At the meeting, Lisa testified that Michael Collins told the members of the meeting, including defendant, defendant's brother, Ryan Flemming, and Lisa, that they could receive probation for the election offense. Lisa testified that one week later, defendant gave Lisa an application for transfer card to change her registration address from 20 Loiselle Drive to 800 Nobie Lane. Lisa testified that she never contacted the Board of Election Commissioners to request an application to change her address.

Lisa identified the January 30, 1995, voter registration card and stated that her first and last name and birthday listed in the upper portion of the card were correct but that her social security number and phone number were incorrect. Lisa testified that although the card was purportedly signed by her, she did not sign the registration card.

Montriett Boey, Lisa's niece, testified that she lived at 8913 West Boul between 1987 and 1995. Montriett stated that she knew defendant for six or seven years prior to trial. Montriett testified that prior to reading the newspaper article in November 1995, which listed her name as one of the individuals registered to vote under the 20 Loiselle Drive address, she did not know that she had been registered to vote in East St. Louis. Both defendant and Michael Collins told Montriett that since the newspaper article did not list her address or social security number correctly, it did not concern her.

Montriett identified the voter registration card that listed her name. Other than the name, Montriett testified that the additional information, including the date of birth, place of birth, social security number, and 20 Loiselle Drive address, were incorrect. Montriett also identified a certificate of registered voter's card that listed her name and included a signature and the 20 Loiselle Drive address which were not hers. Montriett further testified that she did not vote in the November 7, 1995, election.

Robert White, the chief investigator for the State's Attorney's office in St. Clair County, testified that he received a complaint that Loiselle Village had voting irregularities in the 1995 election. Robert testified that he attempted to locate the 14 persons named in the newspaper article registered at 20 Loiselle Drive. Robert testified that the house located at 20 Loiselle Drive is a small, four-room, brick house occupied by Dora Ward, who is 86 years of age. Robert testified that he secured handwriting samples from defendant, Michael Collins, Lisa Boey, Montriett Boey, Ryan Flemming, and Dana Johnson. Robert also testified that defendant told him she had lived at 20 Loiselle Drive with her brother and two other males in January 1995 but had moved to 800 Nobie Lane in July 1995.

Stephen McKasson, a recognized expert in the area of handwriting, testified for the State that the handwriting evidence indicated that Montriett Boey, Lisa Boey, and Dana Johnson did not write their signatures on the voter registration cards. Stephen testified that after requesting a second handwriting exemplar from defendant, he formed the opinion that defendant printed the information in the upper portion of the voter registration cards, including the name, address, date and place of birth, social security number, and telephone number for Montriett Boey, Lisa Boey, and Dana Johnson.

McKasson explained that "East St. Louis" on line two of the address information was omitted on Dana Johnson's registration card and was printed by someone other than defendant on Lisa Boey's and Montriett Boey's registration cards. The State asserted in argument that defendant inadvertently omitted "East St. Louis" from line two of block one so that twice someone else had to write it in for her and the third time the information remained omitted. Stephen further testified, however, that based upon the known writings of defendant, the handwriting evidence did not indicate that defendant had written the signature of Dana Johnson, Lisa Boey, or Montriett Boey on the signature line of the voter registration cards.

The court denied defendant's motion for directed verdict as to the charges concerning Montriett Boey and Lisa Boey but granted the motion as to count II, regarding Dana Johnson, and on May 21, 1998,

found defendant guilty of counts I and III of the criminal indictment. On June 30, 1998, the court sentenced defendant to 18 months' concurrent probation with public employment prohibited for five years following the completion of sentence. Also on June 30, 1998, defendant filed a posttrial motion alleging that the court's guilty findings were against the manifest weight of the evidence, that the court erred in failing to direct a verdict as to counts I and III, that the court erred in failing to strike the State's evidence with respect to Lisa Boey after the State violated discovery, that the court erred in failing to sentence defendant to a lesser-included offense, and that the court erred in finding defendant guilty of fraud due to the fact that the document was attested to or signed by another person. The court denied defendant's posttrial motion. Defendant filed her timely appeal.

## ANALYSIS

### Standard of Review

Defendant contends on appeal that the State failed to prove her guilty beyond a reasonable doubt because the evidence at trial demonstrated that defendant did not sign the voter registration cards. The State asserts that defendant violated the statute when she knowingly printed the false information, namely, the address of 20 Loiselle Drive, on the voting documents.

The relevant question raised by defendant's contention is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found all of the essential elements of the crime beyond a reasonable doubt. See *People v. Gilliam*, 172 Ill. 2d 484 (1996); *People v. Davis*, 278 Ill. App. 3d 532 (1996). If a reviewing court finds that the evidence is so unsatisfactory that it creates a reasonable doubt of the defendant's guilt, the conviction must be set aside. See *Davis*, 278 Ill. App. 3d at 539.

### Mutilation of Election Materials

The sole issue on appeal is whether defendant's conduct constituted knowing falsification of the voter registration cards in violation of section 29—6 of the Election Code (10 ILCS 5/29—6 (West 1996)). "The cardinal rule of statutory construction is to ascertain and give effect to the true intent of the legislature." *People v. Latona*, 184 Ill. 2d 260, 269 (1998). "The most reliable indicator of legislative intent is the language of the statute itself." *Latona*, 184 Ill. 2d at 269. In the absence of a statutory definition suggesting a different legislative intent, words are to be given their ordinary and commonly understood meaning. See *People v. Hicks*, 164 Ill. 2d 218, 222 (1995); *Davis v. Human Rights Comm'n*, 286 Ill. App. 3d 508, 518 (1997). If the language

is clear, the court must give it effect ánd should not look to extrinsic aids for construction. See *In re Marriage of Logston*, 103 Ill. 2d 266, 277 (1984).

■ Section 29—6 of the Election Code reads, in pertinent part, as follows:

> "Any person who knowingly *** falsifies *** any record *** or any other document *** which (a) is used or to be preserved for use in connection with registration[ ] or (b) is used or to be preserved for use in connection with any election pursuant to this Code *** shall be guilty of a Class 4 felony and shall also be ineligible for public employment for a period of 5 years immediately following the completion of his or her sentence." 10 ILCS 5/29—6 (West 1996).

A review of the Election Code's language shows that the mental element of the offense of mutilation of election materials is knowledge. Although knowledge is not defined in the Election Code, the supreme court in *People v. Gean* noted that "[k]nowledge generally refers to an awareness of the existence of the facts which make an individual's conduct unlawful. (21 Am. Jur. 2d *Criminal Law* § 136 (1981))." *People v. Gean*, 143 Ill. 2d 281, 288 (1991).

■ Section 4—8 of the Election Code reads, in pertinent part, as follows:

> "The registration record card shall contain the following *** for the identification of the applicant for registration:
>
> * * *
>
> Signature of voter. The applicant, after the registration and in the presence of a deputy registrar or other officer of registration shall be required to sign his or her name in ink to the affidavit on both the original and duplicate registration record cards." 10 ILCS 5/4—8 (West 1996).

See also 10 ILCS 5/5—7, 6—35 (West 1996).

When the Election Code's words are given their ordinary and commonly understood meaning, it is clear that the legislature intended that for the election material to have effect, a signature is required. Illinois courts have consistently noted the importance of signing a document to give it effect. In *In re Marriage of Lewis*, 213 Ill. App. 3d 1044 (1991), the court held that because the statute required a signed affidavit, the unsigned affidavit lacked the minimum standard of trustworthiness and therefore had no effect. Similarly, in *People v. Davis*, 164 Ill. 2d 309 (1995), the court held that with respect to an allegedly false statement in an affidavit, the offense of perjury is complete the moment the accused has signed and sworn to the false instrument with such intent. Further, in *Sullivan's Wholesale Drug Co. v. Faryl's Pharmacy, Inc.*, 214 Ill. App. 3d 1073 (1991), the court stated that a

reasonable inference from an unsigned agreement is that the agreement has no effect.

■ After reviewing the evidence in the light most favorable to the State to determine whether any rational trier of fact could have found all of the essential elements of the crime beyond a reasonable doubt, we conclude that a trier of fact could rationally have determined that defendant printed the false address information in block one at the top of Montriett Boey's and Lisa Boey's voter registration cards. However, the expert's unrefuted testimony was that defendant did not sign the election material attesting to the truth of the printed information.

Although a document need not be in "due legal form" to be found capable of defrauding another (see *People v. Tarkowski*, 106 Ill. App. 3d 597 (1982)), we nevertheless hold that defendant's signature attesting to the truth of the printed information, as contemplated by the Election Code, was required in order to establish the elements of the offense of mutilation of election materials by falsification.

Defendant's hand-printing of the information on the election materials is insufficient to assure this court of her requisite intent to knowingly falsify the election materials. Without signing the election material, defendant did not attest to the truth of the printed information and could have reasonably inferred that the material had no effect. Thus, we find a reasonable doubt of defendant's mental element of knowledge, an awareness of the existence of facts which made her conduct unlawful. Defendant was therefore not proven guilty beyond a reasonable doubt as to each element of the crime of mutilation of election materials by falsification.

■ The State alternatively asserts that defendant acted in concert with Michael Collins in falsifying the voter registration cards. Defendant correctly counters, however, that because the State did not charge or try defendant under this alternative theory, upholding defendant's conviction on appeal under that theory would deny her due process because she was never given the opportunity to rebut that theory at trial. See *People v. Hudson*, 113 Ill. App. 3d 1041 (1983); *United States v. Salmon*, 944 F.2d 1106, 1115 n.1 (3d Cir. 1991).

## CONCLUSION

For the foregoing reasons, we reverse the decision of the circuit court finding defendant guilty of the charged offenses.

Reversed.

MAAG and KUEHN, JJ., concur.