[Civ. No. 48661. Second Dist., Div. Four. Oct. 12, 1976.]

JILL GREY, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES
COUNTY, Respondent;
NORTHWESTERN NATIONAL LIFE INSURANCE
COMPANY et al., Real Parties in Interest.

**COUNSEL**

Davis & Killian and J. Michael Hughes for Petitioner.

No appearance for Respondent.

Montgomery, Bottum, Regal & McNally and Leonard S. Levy for Real Parties in Interest.

**OPINION**

**KINGSLEY, J.**—Petitioner is the widow of Dr. Lawrence Grey. On April 5, 1974, Dr. Grey was killed when an automobile that he was driving rear-ended a parked truck. At the time of his death, Dr. Grey was insured under a policy issued by the real party in interest, whereby that company agreed to pay the principal sum of $10,000 on his death and an additional sum of $10,000 in case that death was accidental. In July 1974, petitioner filed with the company, on a form provided by it, her "Proof of Death—Claimant's Statement." That form claimed that Dr. Grey's death had resulted from an "accidental bodily injury." It also contained a consent provision, reading as follows: "Medical Authorization To: All Physicians, Hospitals, Clinics, Dispensaries, Sanitariums, Druggists and all other Agencies: You are authorized to permit Northwestern National Life Insurance Company, or its representative, to obtain or view a copy of all your records pertaining to the treatment, history and prescriptions of Dr. Lawrence Grey, my husband, who died 4/5/74. . . ."

In connection with that consent, petitioner listed the names of three doctors who had treated her husband—one for "malignant kidney," and

others for diagnosis and exploratory surgery. Dr. Rozansky was not listed.

In some fashion, the company secured the information that Dr. Grey had consulted Dr. Rozansky, a psychiatrist. It sought to take the deposition of Dr. Rozansky and to secure copies of his records relating to Dr. Grey. The request was denied, the doctor, and petitioner, relying on the psychotherapist-patient privilege contained in section 1010 of the Evidence Code. The company thereupon filed in respondent court an action for declaratory relief. The pertinent portions of that complaint are as follows: "9. A controversy has arisen between the Plaintiff and the Defendant, JILL GREY, with respect to the Plaintiff's right to review and copy all relevant medical records. The Plaintiff contends that every contract of insurance contains an implied covenant of good faith and fair dealing between the insurer, the insured and the beneficiary and that by reason of the said covenant and the provisions of Section 1016, Evidence Code, the Plaintiff is entitled to review and copy those records. The Plaintiff further contends that the breach of the said implied covenant by the Defendant, JILL GREY, through her agent and attorney, relieves the Plaintiff of any liability under the said Policy of insurance. The Defendant, JILL GREY, denies the contentions of the Plaintiff."

"13. A controversy has arisen between the Plaintiff and the Defendant, JILL GREY, with respect to the Plaintiff's liability under the said Policy. The Plaintiff contends that the insured, LAWRENCE GREY, died as a result of suicide, whether sane or insane, within two years of the effective date of the said Policy and that the Plaintiff's liability is limited to the amount of premiums paid under the said Policy. The Defendant, JILL GREY, by and through her agent and attorney, denies the said contentions.

"14. The Plaintiff requests a declaration with respect to its liability under the said Policy to the Defendant and beneficiary, JILL GREY, which declaration is both necessary and proper at this time."

"18. A controversy has arisen between the Plaintiff and the Defendant, JILL GREY, by and through her attorney. The Plaintiff contends that the insured, LAWRENCE GREY, died as the result of suicide, whether sane or insane, and that the said accidental death benefits is [sic] not payable under the said Policy. The Defendant, JILL GREY, by and through her agent and attorney, denies the contentions of the Plaintiff.

"19. The Plaintiff requests a declaration by this court with respect to its liability under the said Policy which declaration is both necessary and proper at this time."

"23. A controversy has arisen between the Plaintiff and the Defendant, JILL GREY, with respect to the Plaintiff's liability under the said Policy of insurance. The Plaintiff contends that it is not liable under the said Policy of insurance for accidental death benefits by reason of the death of the insured, LAWRENCE GREY, through disease or bodily or mental infirmity or medical or surgical treatment thereof as is more specifically set forth in the said Policy of insurance. The Defendant, JILL GREY, by and through her agent and attorney, denies the contentions of the Plaintiff.

"24. The Plaintiff requests a declaration with respect to its liability under the said Policy to the beneficiary, JILL GREY, which declaration is both necessary and proper at this time."

Petitioner answered, denying that Dr. Grey's death was due to suicide, or that it was the result of disease or bodily or mental infirmity or medical or surgical treatment thereof. The company then sought, and secured, an order from respondent court, directing Dr. Rozansky to appear for, and give, his deposition as requested by the company and to produce his records in connection with that deposition. We issued an order to show cause and stayed the order of the respondent court pending the finality of these proceedings. We now direct the issuance of a peremptory writ as prayed.

I

The petition and opposition before us concern only the attempt of the company to secure from Dr. Rozansky information, resulting from his treatment of Dr. Grey, that will (it hopes) sustain its claim of suicide. No issue is here tendered concerning the right of the company to secure from the doctors named in the Proof of Death form data relating to the insurer's claim that the death resulted from bodily or mental infirmity or from the medical or surgical treatment of those conditions.

II

The trial court held, and we agree, that petitioner did not, merely by executing and filing the Proof of Death form, waive the privilege given to

her by section 1014 of the Evidence Code. (*Roberts* v. *Superior Court* (1973) 9 Cal.3d 330 [107 Cal.Rptr. 309, 508 P.2d 309]; *In re Lifschutz* (1970) 2 Cal.3d 415 [85 Cal.Rptr. 829, 467 P.2d 557, 44 A.L.R.3d 1].) The contention now urged on us is that petitioner is within the exception to the basic privilege, as that exception is set forth in section 1016 of the Evidence Code. In light of our conclusion, hereinafter set forth, that the right of a party to an existing or prospective lawsuit to invade the privilege is limited to cases in which something more than mere speculation supports the invasion, we need not, and do not, determine whether petitioner's mere filing of her Proof of Death form made her a "party claiming" within the meaning of subdivision (c) of section 1016.

## III

█ The privilege herein involved, as is the case with other privileges protecting confidential information, is designed to serve a public purpose—namely to encourage people to confide in their attorneys, clergymen and doctors all information that might lead to professional action for their benefit. That policy has a particular importance in cases such as that at bench, involving the patient-psychiatrist privilege. In *In re Lifschutz* (1970) *supra,* 2 Cal.3d 415, the Supreme Court said, at page 431: "In interpreting this exception [in section 1016] we are necessarily mindful of the justifiable expectations of confidentiality that most individuals seeking psychotherapeutic treatment harbor. As has been aptly pointed out by Judge Edgerton in *Taylor* v. *United States* (D.C. Cir. 1955) 222 F.2d 398, 401 [95 App.D.C. 373] (quoting from Guttmacher, Psychiatry and the Law (1952) p. 222), 'The psychiatric patient confides more utterly than anyone else in the world. He exposes to the therapist not only what his words directly express; he lays bare his entire self, his dreams, his fantasies, his sins, and his shame. Most patients who undergo psychotherapy know that this is what will be expected of them, and that they cannot get help except on that condition. . . . It would be too much to expect them to do so if they knew that all they say—and all that the psychiatrist learns from what they say—may be revealed to the whole world from a witness stand." ' "

█ With that consideration in mind, we conclude that the law does not allow an insurer merely to speculate that, somewhere in an insured's past life, there may be some indication of a suicidal tendency. Such a speculation could be raised in every case involving a claim that death was accidental. To accept the insurer's position here would subject every

person claiming damages in a death case to a total revelation of all of the decedent's past life. We reject that position.

In order to invade the confidentiality of Dr. Grey's communications to, and diagnosis by, Dr. Rozansky, the insurer is required to make some prima facie proof that there may be something to support its speculation. In the case at bench, the only showing of materiality or relevancy is contained in the declaration of one of the insurer's counsel, that the officer investigating the collision had "speculated" that it might have been due to suicide. Other portions of the record show only that the officer's report concluded, from physical evidence, that the doctor's car had "drifted off to the right," with a hypothesis that the doctor may have fallen asleep and a "suggestion" that the sheriff investigate the possibility of suicide. That kind of speculation, based solely on the physical evidence of the collision, is not enough to justify an invasion of the doctor's privacy.

Let a peremptory writ issue, directing the respondent court to vacate its order of April 23, 1976, in its case No. C-132,852, and to enter an order denying the motion of Northwestern National Life Insurance Company to compel Dr. Rozansky to produce documents at, and to answer questions at, the deposition sought by such company.

Files, P. J., concurred.

**JEFFERSON (Bernard), J.**—I concur in the majority's result but I consider that the result should be placed on a wider ground than that set forth in the majority's opinion.

The majority concludes that the real party in interest, Northwestern National Life Insurance Company, was not entitled to take the deposition of Dr. Rozansky, the decedent's psychiatrist, by giving a narrow interpretation to the psychotherapist-patient privilege, set forth in Evidence Code sections 1010-1015. Northwestern claims in this matter that the psychotherapist-patient privilege has no application because of the patient-litigant exception to this privilege provided by Evidence Code section 1016.

The basis of the majority's holding against Northwestern is that the right of a party to an existing or prospective lawsuit to invade the privilege is limited to cases in which something more than mere

speculation supports the invasion. Consequently, the majority concludes that it is not necessary to determine whether petitioner's filing of a proof-of-death form with Northwestern brought into existence the patient-litigant exception set forth in Evidence Code section 1016. Under Evidence Code section 1016, subdivision (c), the psychotherapist-patient privilege is not applicable to a communication relevant to an issue concerning the mental or emotional condition of the patient if *such issue has been tendered by* "[a]ny party claiming as a beneficiary of the patient through a contract to which the patient is or was a party."

Although the majority states it is not making a decision as to the applicability of Evidence Code section 1016, its opinion is subject to the implication that it is making an interpretation of this section by stating that "[i]n order to invade the confidentiality of Dr. Grey's communications to, and diagnosis by, Dr. Rozansky, the insurer is required to make some prima facie proof that there may be something to support its speculation." The majority then proceeds to state that Northwestern's discovery motion was based upon a declaration which offered nothing more than speculation that the insured's death might have been due to suicide, rather than to an accident. The majority opinion then points out that as a basis of Northwestern's speculation that the patient's death might have been due to suicide, reliance was placed upon the police officer's investigation of the collision which contained a conclusion that from physical evidence, the deceased patient's car had drifted off to the right, with a hypothesis that the doctor may have fallen asleep, and with a suggestion that the sheriff investigate the possibility of suicide.

The majority concludes: "That kind of speculation, based solely on the physical evidence of the collision, is not enough to justify an invasion of the doctor's privacy." This quotation leaves an inference that something more by Northwestern in its discovery motion would have been sufficient to justify an invasion of the patient's confidential communications with his psychotherapist. Such an inference can be made only upon an assumption that the patient-litigant exception of Evidence Code section 1016 would be applicable to preclude petitioner from successfully asserting the psychotherapist-patient privilege.

It is my view that the holding of the majority ought to be predicated additionally upon the view that the patient-litigant exception provided by Evidence Code section 1016 does not apply in the factual situation presented in the instant case. It is my opinion that Northwestern, the

insurer, is precluded from any discovery of the patient's communications with Dr. Rozansky, his psychotherapist, and any diagnosis by Dr. Rozansky, because of the psychotherapist-patient privilege. Further, that Northwestern made no showing that the patient-litigant exception provided by Evidence Code section 1016, subdivision (c), is involved.

The patient-litigant exception to the psychotherapist-patient privilege is not involved because petitioner Jill Grey, the surviving widow of the deceased patient, has not tendered the issue of the mental or emotional condition of her deceased husband by filing a claim against Northwestern on the insurance policy, nor would she tender such issue by any subsequent lawsuit based upon a claim of accidental death. Petitioner's claim is that the patient's death resulted from accidental means. Although petitioner has the burden of proving the contention of accidental death, such a claim or lawsuit does not tender an issue by her as to her deceased husband's mental or emotional condition. In asserting that the patient's death was due to suicide as a result of his mental or emotional condition, it is Northwestern that has tendered the issue of the patient's mental or emotional condition.

It seems clear that the *patient-litigant exception* to the psychotherapist-patient privilege, set forth in Evidence Code section 1016, must be given a *narrow* construction under mandate of the California Supreme Court. Thus, in *In re Lifschutz* (1970) 2 Cal.3d 415 [85 Cal.Rptr. 829, 467 P.2d 557, 44 A.L.R.3d 1], the California Supreme Court, relying upon the United States Supreme Court's declaration that "[v]arious guarantees [of the Bill of Rights] create zones of privacy" (*Griswold* v. *Connecticut* (1965) 381 U.S. 479, 484 [14 L.Ed.2d 510, 514, 85 S.Ct. 1678]), asserted that "we believe that the confidentiality of the psychotherapeutic session falls within one such zone." (*In re Lifschutz, supra,* 2 Cal.3d 415, at pp. 431-432.) And in *Roberts* v. *Superior Court* (1973) 9 Cal.3d 330, 337 [107 Cal.Rptr. 309, 508 P.2d 309], the Supreme Court, referring to *In re Lifschutz,* added that "because of the potential encroachment upon constitutionally protected rights of privacy by the compelled disclosure of confidential communications between the patient and his psychotherapist [citation], *trial courts should carefully control compelled disclosures in this area.* Thus, the psychotherapist-patient privilege is to be liberally construed in favor of the patient." (Italics added.) If substance is to be given to the rule that "the psychotherapist-patient privilege is to be liberally construed in favor of the patient," it necessarily follows that an

*exception* to the privilege, such as the patient-litigant exception (Evid. Code, § 1016), must be given a correspondingly *narrow* construction. This is the teaching to be derived from *Roberts* and *In re Lifschutz.*