THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JUAN ACEVEDO, Defendant-Appellant.

Second District    No. 2—93—1476

Opinion filed September 26, 1995.

G. Joseph Weller and Sherry R. Silvern, both of State Appellate Defender's Office, of Elgin, for appellant.

David R. Akemann, State's Attorney, of St. Charles (William L. Browers and David A. Bernhard, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE BOWMAN delivered the opinion of the court:

Defendant, Juan Acevedo, appeals his conviction of perjury (Ill. Rev. Stat. 1991, ch. 38, par. 32—2 (now 720 ILCS 5/32—2 (West 1992)) and sentence of five years' imprisonment. We affirm.

On October 10, 1991, defendant testified as a witness during the

murder trial of Robert Ranjel, also known by the nickname of "Droopy." Ranjel was found not guilty of murder. Defendant was charged with two counts of perjury based on his testimony in the murder trial. The first count was based on the following exchange between the prosecutor and defendant:

"Q. At that time did you tell Wayne Biles, along with Investigator Powell of the Aurora Police Department, that a few minutes after Psycho [Alberto Gonzalez] got shot, Droopy, Loco, and Bam-Bam came by dressed in black with paint on their faces?

A. No, I didn't."

The second count of perjury was based on the following exchange:

"Q. Did you say—did you tell Detective Anderson on that date that you heard shots fired from the direction of Psycho's house, and five to ten minutes later Droopy, Loco, and Bam-Bam arrived with faces painted and they asked if they could wash 'em off at your place, did you tell him that, or words to that effect?

A. No, I didn't."

At defendant's trial for perjury, the State called Gregory Anderson of the Aurora police department. Anderson testified that on November 11, 1990, while investigating the murder of Alberto Gonzalez, he interviewed defendant. Anderson testified that defendant told him the following. Defendant was home on the night of the murder and he heard shots from three blocks away. Five to ten minutes after the shots, Bam-Bam, Loco, and Droopy came to defendant's house to wash paint from their faces. Defendant told them to leave when they were done.

Wayne Biles, a vice and narcotics officer with the Aurora police department, testified that he questioned defendant about the Gonzalez murder on November 4, 1990. With Investigator William Powell of the Aurora police department present, defendant stated that on Halloween 1990, a few minutes after Psycho was shot, Droopy, Loco, and Bam-Bam drove to the back of defendant's home and got out of their car. They were all dressed in black with their faces painted. Investigator Powell testified to substantially the same facts as Biles. The prosecution rested. The trial court denied defendant's motion for a directed finding. The defense rested. The trial court denied defendant's second motion for a directed finding.

The trial court found defendant guilty on count I and not guilty on count II. On November 24, 1993, after denying defendant's motion for a new trial, the trial court sentenced defendant to five years' imprisonment. On December 22, 1993, the trial court denied defendant's motion to reconsider sentence. Defendant then filed a timely notice of appeal.

On appeal, defendant contends (1) the State failed to prove the element of materiality in the offense of perjury beyond a reasonable doubt; and (2) the trial court erred in sentencing defendant by failing to consider the financial impact of defendant's incarceration on the Department of Corrections. We will address each contention separately.

■ Defendant's first contention is that the State failed to prove the element of materiality beyond a reasonable doubt. To sustain a conviction of perjury, the State must establish that: (1) the defendant gave statements under oath or affirmation in any type of matter where the law requires an oath or affirmation; (2) the statements were false; (3) the statements were material to the issue or point in question at the proceeding in which the false statements were made; and (4) the defendant did not believe the statements to be true. *People v. Davis* (1995), 164 Ill. 2d 309, 311-12.

■ It is the third element—materiality—which defendant argues the State did not establish. Materiality is derived from the relationship between the proposition of the allegedly false statement and the issues in the case. (*People v. Harris* (1968), 102 Ill. App. 2d 335, 337.) The test of materiality for an allegedly perjured statement is whether the statement tends to prove or disprove an issue in the case. (See *People v. Toner* (1977), 55 Ill. App. 3d 688, 693; *People v. Beacham* (1977), 50 Ill. App. 3d 695, 701-02.) A statement is material when it did influence, or could have influenced, the trier of fact. *Davis*, 164 Ill. 2d at 316 (McMorrow, J., concurring); *People v. Briddle* (1980), 84 Ill. App. 3d 523, 527; accord *Davis*, 164 Ill. 2d at 311 ("[t]he language of the perjury statute does not require the alleged false statements to be before the trier of fact or anyone else").

■ Defendant argues that his allegedly false statements were not material because the State presented insufficient evidence at his perjury trial that Ranjel had presented an alibi defense at the murder trial. Defendant therefore asserts that his alleged statements could not have been material to the State's attempt to discredit Ranjel's alibi defense.

We disagree. Our review of the record indicates that the State offered testimony indicating that Ranjel had presented an alibi defense at his murder trial. However, even if Ranjel did not present an alibi defense at his murder trial, defendant's testimony denying he made the alleged statements was nonetheless material. The statements defendant denied making to the police would have placed Ranjel within a few blocks of the murder minutes after it occurred. As such, we believe that the statements were material because they would have tended to prove or disprove a key issue in the murder trial—whether Ranjel was near the murder scene minutes after the murder.

Defendant further argues that the statements were not material because the State did not offer at the murder trial defendant's prior statements to the police. Defendant cites *People v. Mason* (1978), 60 Ill. App. 3d 463, for the proposition that a prior inconsistent statement by a defendant that was not presented to the jury is not material because it could not have influenced the jury. However, our supreme court has recently rejected *Mason*'s holding that the false statement must be before the trier of fact. (*Davis*, 164 Ill. 2d at 311-12.) Thus, the State's failure to offer defendant's prior statements to the police at Ranjel's murder trial does not render the statements immaterial. See *Davis*, 164 Ill. 2d at 311-12.

Moreover, the perjury charges against defendant were based on defendant's denials that he made the statements to the police, not on the substance of the statements to the police themselves. Those denials were before the jury. Even under defendant's reading of *Mason*, therefore, the denials were material to the issues in the murder trial. As we explained above, the denials tended to disprove that Ranjel was near the murder scene minutes after the murder.

Defendant's second contention is that the trial court erred in sentencing him by failing to consider the financial impact of defendant's incarceration on the Illinois Department of Corrections. Before addressing this contention, however, we must first address the issue of waiver. The State argues that defendant waived this contention by failing to raise it at the sentencing hearing. Relying on *People v. Youngbey* (1980), 82 Ill. 2d 556, and *People v. Harris* (1985), 105 Ill. 2d 290, defendant responds that the trial court's failure to consider the financial impact statement is a nonwaivable issue.

■ Waiver is a limitation on the parties to an appeal, but not on the reviewing court. (*Illinois Graphics Co. v. Nickum* (1994), 159 Ill. 2d 469, 496; *People v. Benitez* (1994), 269 Ill. App. 3d 182, 184.) Thus, without commenting on the merits of the parties' waiver arguments, we elect to address the merits of defendant's second contention due to the importance of the issues raised.

We now turn to the issue of whether the trial court failed to consider the financial impact of defendant's incarceration on the Department of Corrections (Department). Section 5—4—1(a)(3) of the Unified Code of Corrections (730 ILCS 5/5—4—1(a)(3) (West 1992)) states that, at a sentencing hearing, the trial court shall "consider the *** financial impact statement filed with the clerk of the court by the Department of Corrections." (730 ILCS 5/5—4—1(a)(3) (West 1992).) Defendant argues that the trial court could not have considered the financial impact of his incarceration because there is no evidence in the record to suggest (1) that the Department filed a financial impact statement with the

clerk of the court; or (2) that the trial court was aware of the financial impact statement when it sentenced defendant.

■ We disagree with defendant's initial argument that there is no evidence in the record to suggest that the Department filed a financial impact statement. Section 3—2—9 prescribes the procedures the Department employs when filing a financial impact statement:

> "Each fiscal year, the Department shall prepare and submit to the clerk of the circuit court a financial impact statement that includes the estimated annual and monthly cost of incarcerating an individual in a Department facility and the estimated construction cost per bed. The estimated annual cost of incarcerating an individual in a Department facility shall be derived by taking the annual expenditures of Adult Division facilities and all administrative costs and dividing the sum of these factors by the average annual inmate population of the facilities. All statements shall be made available to the public for inspection and copying." (730 ILCS 5/3—2—9 (West 1992).)

In the absence of any evidence to the contrary, we presume that public agencies like the Department perform their statutory duties. (*Cf. McDunn v. Williams* (1993), 156 Ill. 2d 288, 318 (election judges are presumed to perform their statutorily mandated duties).) The burden, therefore, is on the defendant to demonstrate that the Department failed to perform its statutorily mandated duty. Because no such evidence exists in the record, we will presume that the Department has complied with the requirements of section 3—2—9.

We also disagree with defendant's argument that there is no evidence in the record to suggest that the trial court was aware of the financial impact statement when it sentenced defendant. Defendant claims that a copy of the financial impact statement must be submitted to the trial court in order for us to conclude that the trial court considered it at sentencing. However, the familiar principles of statutory construction lead us to reject this claim.

The cardinal rule of statutory construction is to give effect to the language and intent of the legislature. (*People v. Hicks* (1995), 164 Ill. 2d 218, 222.) To accomplish this goal, the entire statute must be considered, and words used should be given their plain and ordinary meanings. (*Hicks*, 164 Ill. 2d at 222; *People v. Lowey* (1995), 271 Ill. App. 3d 929, 932.) The language of a statute must be viewed as a whole, such that each section of the statute is examined in relation to every other section. (*Scadron v. City of Des Plaines* (1992), 153 Ill. 2d 164, 185.) Moreover, a court may properly consider not only the language used in the statute but also the reason and necessity for the law, the evils sought to be remedied, and the purpose to be achieved.

(*Lowey*, 271 Ill. App. 3d at 932.) In considering legislative intent, courts "must presume that the legislature did not intend absurdity, inconvenience or injustice, and select an interpretation of the statute which leads to logical results and avoids that which would be absurd." *People v. Liberman* (1992), 228 Ill. App. 3d 639, 647.

Applying these principles to the case at bar, we do not believe that the legislature intended to require that a copy of the financial impact statement be provided to every sentencing court. Section 3—2—9 requires the Department to file a financial impact statement with the clerk of the court once each year. (730 ILCS 5/3—2—9 (West 1992).) Section 5—4—1(a)(3) requires the trial court to consider the financial impact of the defendant's incarceration based on this financial impact statement. (730 ILCS 5/5—4—1(a)(3) (West 1992).) Our reading of these sections indicates that the legislature intended for the trial court to consider the financial impact statement on file with the clerk of the court, and did not intend that the statement be directly submitted to the trial court in every case. The legislature recognized that it would be absurd and inconvenient to require the financial impact statement, which is already on file, to be submitted to the trial court at every sentencing. In other words, once a trial court has been made aware of the cost of incarcerating a defendant for the previous year, it is not necessary for it to be reminded of that cost at every sentencing hearing.

Moreover, since the financial impact statement is a public record and is easily accessible to the trial court, we presume, absent some evidence to the contrary, that the trial court considered it before sentencing the defendant. To hold otherwise would essentially require the trial court to specify on the record that it had considered the financial impact of the defendant's sentence on the Department. However, this would undermine the well-settled principle that a trial court is not required to specify on the record the reasons for a defendant's sentence. (See *People v. La Pointe* (1982), 88 Ill. 2d 482, 493.) Thus, it is reasonable to presume, absent evidence to the contrary, that the trial court performed its obligations and considered the financial impact statement before sentencing defendant. (*Cf. People v. Foster* (1994), 262 Ill. App. 3d 892, 898 (a reviewing court will presume that the trial court considered all mitigating factors brought before it when sentencing a defendant).) We conclude that the trial court did not err when it sentenced defendant.

For the foregoing reasons, we affirm the judgment of the circuit court of Kane County.

Affirmed.

THOMAS and HUTCHINSON, JJ., concur.