D.C., Plaintiff-Appellant, v. S.A. *et al.*, Defendants-Appellees.

Third District   No. 3—95—0568

Opinion filed September 12, 1996.

694

LYTTON, J., dissenting.

James R. Sullivan (argued), of Oak Brook, for appellant.

James Franklin Best and Troy A. Lundquist (argued), both of Fraterrigo, Best & Beranek, of Joliet, for appellees.

PRESIDING JUSTICE BRESLIN delivered the opinion of the court:

This interlocutory appeal raises the question whether a plaintiff who files a negligence lawsuit introduces his mental condition as an element of his claim and thereby waives his privilege to refuse disclosure of mental health records under the Mental Health and Developmental Disabilities Confidentiality Act (Mental Health Act) (740 ILCS 110/1 *et seq.* (West 1992)). We hold that a plaintiff does not waive this privilege by filing a negligence action. Therefore, we reverse the circuit court's judgment.

In June 1992, the plaintiff, D.C., was injured when he was struck by an automobile at an intersection. The plaintiff spent several days in the hospital and thereafter sought treatment at a mental health

facility. He then brought suit against S.A., as the driver of the automobile, and J.A., Jr., as S.A.'s principal, seeking damages for injuries suffered as a result of the accident. The plaintiff's complaint alleged that he was in the exercise of ordinary care for his own safety at the time of the accident; otherwise, however, the complaint made no mention of the plaintiff's mental state at the time of the accident. Moreover, the plaintiff did not include within his claim for damages any injuries to his mental health or expenses incurred from his stay at the mental health facility.

The defendants filed an answer, affirmative defenses, and a countercomplaint, seeking compensation for damage to their automobile. The affirmative defenses and countercomplaint alleged that the plaintiff failed to exercise ordinary care for his safety. The plaintiff denied these allegations.

During discovery, the plaintiff produced a letter from his treating physician which raised the possibility that the plaintiff intentionally walked in front of the defendants' car in a suicide attempt. On the basis of this information, the defendants moved to compel production of the psychiatric records compiled during the plaintiff's stay at the mental health facility. The plaintiff refused disclosure pursuant to the psychotherapist-patient privilege contained in section 10 of the Mental Health Act (740 ILCS 110/10 (West 1992)). The plaintiff did, however, submit the records to the circuit court for an *in camera* inspection.

After reviewing the records *in camera*, the circuit court determined that while many of the records in question were privileged, there was a category of records which "refer[s] to how the patient got into the hospital and what led up to this particular incident, and there are things there that I think do relate pretty directly to this accident." The court also found that the plaintiff introduced his mental condition either by filing the lawsuit or by alleging that he was in the exercise of due care for his own safety. The court certified this issue for interlocutory review, which we granted pursuant to Supreme Court Rule 308(a) (134 Ill. 2d R. 308(a)).

The sole issue for our review is whether a plaintiff who files a negligence suit waives his privilege to refuse the disclosure of mental health records.

This question requires us to construe section 10 of the Mental Health Act. The task of statutory construction is to ascertain and give effect to the legislature's intent. *People v. Scharlau*, 141 Ill. 2d 180, 565 N.E.2d 1319 (1990). If the legislature's intent is clear from the statute's language, the court must confine its inquiry to a consideration of that language and must not look to extrinsic aids. *In*

*re Marriage of Logston*, 103 Ill. 2d 266, 469 N.E.2d 167 (1984). If, however, statutory language is susceptible of more than one interpretation, the court may look beyond the language to consider the purposes to be served by the statute. *Sisters of the Third Order of St. Francis v. People ex rel. Barra*, 151 Ill. App. 3d 875, 503 N.E.2d 1069 (1987). Questions of statutory construction are questions of law. *Wright v. Chicago Municipal Employees' Credit Union*, 265 Ill. App. 3d 1110, 639 N.E.2d 203 (1994).

■ Section 10(a) of the Mental Health Act provides that in any civil proceeding a recipient of mental health services may refuse to disclose the records of such services. 740 ILCS 110/10(a) (West 1992). If, however, a recipient introduces his mental condition as an element of his claim or defense, then the records are subject to disclosure, provided certain other conditions are met. See 740 ILCS 110/10(a)(1) (West 1992). The question we must answer is whether a plaintiff who files a negligence lawsuit "introduces his mental condition as an element of his claim."

The court in *Webb v. Quincy City Lines, Inc.*, 73 Ill. App. 2d 405, 219 N.E.2d 165 (1966), held that a plaintiff in a personal injury action did not introduce her mental condition as an element of her claim by seeking damages for pain and suffering. The *Webb* court read the exception's language narrowly in holding that the privilege existed unless the plaintiff specifically made her condition a part of her claim. The court went on to hold that a general allegation of pain and suffering did not rise to the level of specificity required to effectuate a waiver of the privilege. 73 Ill. App. 2d at 408-09, 219 N.E.2d at 167. To the same effect is *Tylitzki v. Triple X Service, Inc.*, 126 Ill. App. 2d 144, 261 N.E.2d 533 (1970) (plaintiff must "affirmatively" place mental condition at issue to effect waiver).

The plaintiff's mental condition in *Webb* was raised in reference to the issue of damages. In this case, the plaintiff's condition bears upon the issue of liability. No court has yet applied the *Webb* court's rationale where the mental condition in question was relevant to the issue of liability. However, the court in *Maxwell v. Hobart Corp.*, 216 Ill. App. 3d 108, 576 N.E.2d 268 (1991), did decide that an implied waiver may be found where the plaintiff's mental condition is relevant to the liability issue in a strict products liability action. But we disagree with the *Maxwell* court's reasoning and therefore decline to apply it to actions involving negligence.

The plaintiff in *Maxwell* was injured when his hand became caught in a waste equipment machine. He sued the machine's manufacturer under a strict products liability theory, but apparently made no mention of his own mental condition in the complaint.

Through discovery, the defendant found that the plaintiff may have been intoxicated at the time of the accident and, therefore, requested records pertaining to the plaintiff's treatment for alcoholism. 216 Ill. App. 3d at 109-10, 576 N.E.2d at 269.

■ Although the *Maxwell* court held that the Mental Health Act did not govern records relating to treatment for alcoholism, it nonetheless considered whether section 10's exception would have applied if the records had been governed by the Act. The court determined that the plaintiff impliedly introduced his "physiological and biological condition" at the time of the accident by filing the strict liability action. 216 Ill. App. 3d at 113, 576 N.E.2d at 271. This determination was based upon three separate arguments: first, that a plaintiff impliedly introduces his mental condition by alleging that a defendant proximately caused his injuries; second, that a plaintiff's comparative fault is relevant in strict liability cases; and third, that plaintiffs who initiate litigation cannot use the privilege as a shield when mental condition is a "critical consideration" in the case. 216 Ill. App. 3d at 113, 576 N.E.2d at 271. None of these arguments are persuasive.

The *Maxwell* court's first argument fails because, although a plaintiff's contributory negligence may be a proximate cause of his injuries, the plaintiff's only burden is to prove that the defendant's acts proximately caused his injuries. The plaintiff's actions become relevant only if the defendant raises the issue of comparative negligence. See *Casey v. Baseden*, 111 Ill. 2d 341, 490 N.E.2d 4 (1986); *Long v. City of New Boston*, 91 Ill. 2d 456, 440 N.E.2d 625 (1982). It follows that a plaintiff may recover in a negligence action without calling into question his own actions at the time of the accident. Accordingly, we cannot agree that a plaintiff necessarily raises his mental condition as an element of his claim by alleging that the defendant's conduct proximately caused his injuries. See generally W. Keeton, Prosser & Keeton on Torts § 65, at 452 (5th ed. 1984).

As to the second argument, we agree that a plaintiff's mental condition may be relevant to the issue of comparative negligence. But the test for whether a recipient has waived his privilege is not whether the privileged information is relevant; instead, it is whether the recipient has introduced his condition as an element of his claim. Therefore, waiver cannot be premised on the degree to which mental health records are relevant to the proceedings for which they are sought.

The *Maxwell* court's third argument is that plaintiffs should not be allowed to use the Mental Health Act's privilege to bar disclosure of evidence bearing on "critical considerations" in the cases they ini-

tiate. The defendants in the case at bar echo this argument when they suggest that plaintiffs should not be able to sue other people for injuries caused by their own suicide attempts "and then suppress any evidence of their suicidal intent." The gist of this argument seems to be that recipients who initiate litigation should not have the same access to the Mental Health Act's privilege as do recipients who defend actions.

The Mental Health Act's privilege applies unless the recipient introduces his mental condition as an element of his claim or defense. We do not believe the legislature would have made reference to a recipient's "claim" had it not intended for plaintiffs to assert the privilege. Moreover, regardless of whether a plaintiff or defendant asserts the privilege, its successful application may result in the exclusion of relevant evidence. In every case, the exclusion of relevant evidence creates the possibility that liability may fall upon the party other than whom it may have fallen upon had the evidence been admitted. Therefore, it is no more problematic for a plaintiff to assert the privilege than it is for a defendant to do so.

■ Apart from the arguments raised in *Maxwell*, there is no basis under section 10 of the Mental Health Act for the application of different standards depending on whether a recipient's mental condition is relevant to damages or to liability. Section 10's exception applies whenever a recipient introduces his mental condition as an element of his claim. Both damages and liability are elements of a negligence plaintiff's claim. Therefore, if the *Webb* and *Tylitzki* courts were correct in holding that a mental condition may be introduced only through a specific or affirmative statement of the condition, this rule must apply regardless of whether the mental condition bears on the question of damages or liability.

We see no reason to depart from the rule in *Webb* and *Tylitzki*, which comports with the case law in other jurisdictions. In both *Dillenbeck v. Hess*, 73 N.Y.2d 278, 536 N.E.2d 1126, 539 N.Y.S.2d 707 (1989), and *Clark v. District Court, Second Judicial District*, 668 P.2d 3 (Colo. 1983), it was held that a waiver of confidentiality may be found in either the damages or liability context only where a litigant affirmatively places his condition at issue. The *Clark* court explained:

> "When the privilege holder pleads a physical or mental condition as the basis of a claim or as an affirmative defense, the only reasonable conclusion is that he thereby impliedly waives any claim of confidentiality respecting that same condition. The privilege holder under these circumstances has utilized his physical or mental condition as the predicate of some form of judicial relief, and his legal position as to that condition is irreconcilable with a claim of confidentiality ***." 668 P.2d at 10.

*Cf. State v. Valley,* 153 Vt. 380, 571 A.2d 579 (1989) (criminal defendant who pleads insanity defense places mental condition at issue). It follows that where a litigant seeks relief that is not predicated upon his own mental condition, he does not lose the right to assert the privilege.

In view of the foregoing, we hold that a plaintiff-recipient does not waive his privilege to refuse disclosure of mental health records unless he specifically or affirmatively raises the condition as an element of his claim. Because the filing of a negligence action does not require a plaintiff to specifically or affirmatively plead his mental condition, we conclude that a plaintiff does not necessarily introduce his mental condition as an element of his claim.

■ In the case at bar, the plaintiff did not plead his mental condition in an effort to establish either the defendants' liability or injuries to his mental health. He did allege that he was in the exercise of due care for his own safety at the time of the accident, but there are two reasons why this allegation is insufficient to constitute a waiver. First, the general allegation that one was in the exercise of due care for his own safety does not rise to the level of specificity required to effect a waiver. Second, this allegation is not necessary to the plaintiff's claim. See *Long v. City of New Boston,* 91 Ill. 2d 456, 440 N.E.2d 625 (1982) (negligence plaintiff need not plead freedom from contributory negligence). Therefore, the plaintiff may amend his complaint to drop this allegation and still prevail on his claim.

We are left, then, to conclude that the only manner by which the plaintiff's mental condition becomes an issue in this case is through the defendants' attempt to establish comparative negligence. Section 10 of the Mental Health Act cannot be read to permit defendants to discover plaintiffs' mental health records in order to prove comparative negligence. For, if the legislature had so intended, it would have joined those states which allow any party, not just the recipient, to introduce the recipient's mental condition as an element of a claim or defense. See, *e.g., R.K. v. Ramirez,* 38 Tex. Sup. Ct. J. 52, 887 S.W.2d 836 (1994); *State v. Valley,* 153 Vt. 380, 571 A.2d 579 (1989). As things stand, however, only the recipient may waive his privilege under the Mental Health Act. See *Pritchard v. Swedish-American Hospital,* 191 Ill. App. 3d 388, 547 N.E.2d 1279 (1989). Consequently, the defendants' attempt to introduce the plaintiff's mental condition cannot constitute a waiver of his privilege.

The result in this case may be perceived in some quarters as an affront to justice and common sense. In other quarters it might be viewed as the price society must pay to protect the psychotherapist-patient relationship. *Cf. Jaffee v. Redmond,* 518 U.S. 1, 135 L. Ed.

2d 337, 116 S. Ct. 1923 (1996) (court recognizes common law psychotherapist-patient privilege under Rule 501 of the Federal Rules of Evidence). But regardless of where persons come down on this issue, our holding is compelled by the plain language of section 10 of the Mental Health Act, and no one can dispute that the legislature has the power, through the enactment of evidentiary privileges, to inhibit the truth-seeking process to protect certain relationships. It is for the legislature, and not the courts, to determine whether the Mental Health Act has tilted the balance between truth-seeking and the protection of patient-psychotherapist relationships too far in either direction.

For the foregoing reasons, the judgment of the circuit court of Will County is reversed, and the cause is remanded for further proceedings.

Reversed and remanded.

SLATER, J., concurs.

JUSTICE LYTTON, dissenting:

I dissent. Section 10 of the Mental Health and Developmental Disabilities Confidentiality Act (Mental Health Act) (740 ILCS 110/10 (West 1992)) provides that a recipient of mental health services has a privilege to refuse to disclose and to prevent the disclosure of his records and communications, except where the recipient introduces his condition as an element of his claim or defense. The majority treats this privilege as absolute and concludes that plaintiff's records are privileged even though they may indicate that the incident which gave rise to the lawsuit could have been caused by plaintiff's failed attempt to commit suicide. I cannot agree.

"The cardinal rule of statutory construction is to give effect to the language and intent of the legislature. *** In considering legislative intent, courts 'must presume that the legislature did not intend absurdity, inconvenience or injustice, and select an interpretation of the statute which leads to logical results and avoids that which would be absurd.' " *People v. Acevedo*, 275 Ill. App. 3d 420, 425-26, 656 N.E.2d 118, 122-23 (1995), quoting *People v. Liberman*, 228 Ill. App. 3d 639, 647, 592 N.E.2d 575, 581 (1992). "Moreover, a court may properly consider not only the language used in the statute but also the reason and necessity for the law, the evil sought to be remedied, and the purpose to be achieved." *Acevedo*, 275 Ill. App. 3d at 425, 656 N.E.2d at 122-23.

Section 10 of the Mental Health Act serves the noble purpose of

protecting the confidential records and communications of mental health patients. Unfortunately, today the majority has invited the legislature to narrow the parameters of section 10:

"The result in this case may be perceived in some quarters as an affront to justice and common sense. *** [O]ur holding is compelled by the plain language of section 10 of the Mental Health Act ***." 283 Ill. App. 3d at 699-700.

While I agree that the majority has reached a result that is "an affront to justice and common sense," I do not agree that this result was "compelled" by the language of the statute.

By their very nature, privileges inhibit the fact-finding process. Nevertheless, they serve other important functions, such as protecting interests and relationships regarded to be of "sufficient social importance to justify some sacrifice of availability of evidence relevant to the administration of justice." 1 J. Strong, McCormick on Evidence § 72, at 269 (4th ed. 1992).

Yet, no privilege is absolute. Even the attorney-client privilege—one of the oldest privileges of confidentiality known to the common law, often described as essential to the functioning of the adversary system—is inapplicable where a client seeks or obtains the services of an attorney in furtherance of criminal or fraudulent activities. *In re Marriage of Decker*, 153 Ill. 2d 298, 312-13, 606 N.E.2d 1094, 1101 (1992). Recently, while recognizing the psychotherapist privilege for litigation in federal courts, the United States Supreme Court indicated that there are "limits on confidentiality" (*Jaffee v. Redmond*, 518 U.S. 1, 13 n.12, 135 L. Ed. 2d 337, 347 n.12, 116 S. Ct. 1923, 1930 n.12 (1996)) and "situations in which the privilege must give way" (*Jaffee*, 518 U.S. at 18 n.19, 135 L. Ed. 2d at 349 n.19, 116 S. Ct. at 1932 n.19).

This case presents one situation where the principles of due process and fundamental fairness mandate that the privilege must give way. Since plaintiff's records may reveal that this lawsuit could be a fraudulent scheme to profit from plaintiff's own failed suicide attempt, I believe that such information must be revealed even though it might otherwise be deemed confidential.[1]

In *Prink v. Rockefeller Center, Inc.*, 48 N.Y.2d 309, 398 N.E.2d

---

[1]In light of the majority's ruling, I will refrain from disclosing the precise contents of plaintiff's records. Suffice to say, the records purport to contain the plaintiff's own words in quotes. While this case is presently at the discovery stage, and the issue of causation has not yet been reached, the importance of these records is beyond dispute. Medical records are considered "inherently reliable" (*People v. Trotter*, 178 Ill. App. 3d 292, 297, 533 N.E.2d 89, 92 (1988)), and hospital records enjoy a "high degree of reliability" (*Wilson*

517, 422 N.Y.S.2d 911 (1979), Robert Prink fell from his thirty-sixth-floor office, and his widow filed suit alleging that the building's owners and architects were negligent in the design and installation of a window alcove desk. The death certificate noted that, according to Prink's psychiatrist, decedent had been tense and depressed. The court of appeals concluded that, under such circumstances, the unfairness of permitting the plaintiff to succeed by hiding behind the privilege could not be tolerated. "To hold otherwise is to ignore the realities of the factual situation and to come perilously close to a taking of defendants' property without due process of law." *Prink*, 48 N.Y.2d at 317, 398 N.E.2d at 522, 422 N.Y.S.2d at 916.

The majority ignores these concerns, instead holding that "[i]t is for the legislature, and not the courts, to determine whether the Mental Health Act has tilted the balance." 283 Ill. App. 3d at 700. I cannot believe that the absurd outcome of this appeal reflects the intent of the Illinois legislature. But, even assuming that the legislature intended these results, I do not believe that the judiciary can so easily wash its hands of responsibility. Certainly, civil defendants are entitled to due process before their property is taken (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2) and the right to find remedies and justice in the law (Ill. Const. 1970, art. I, § 12).

This is a landmark case. The majority departs from the long-standing practice of the courts of prohibiting litigants from using the "shield" of a privilege as a "sword" against opponents. See *United States v. Rylander*, 460 U.S. 752, 758, 75 L. Ed. 2d 521, 529, 103 S. Ct. 1548, 1553 (1983) (privilege against self-incrimination is not a sword); *MacGreal v. Taylor*, 167 U.S. 688, 701, 42 L. Ed. 326, 333, 17 S. Ct. 961, 966 (1897) (privilege of infancy is intended to be used "simply as a shield to protect" and not "a sword to be used to the injury of others"). This is not a situation wherein the courts are deferring to the legislature's determination to merely shield certain information from involuntary disclosure. Here, the majority may be allowing plaintiff to abuse the psychotherapist-patient privilege by using it as a sword against the defendants.[2]

Unless the majority's decision is reversed by a higher court, the

---

*v. Clark*, 84 Ill. 2d 186, 194, 417 N.E.2d 1322, 1326 (1981)).

[2]On the other hand, defendants should not be permitted access to plaintiffs' psychiatric records by simply alleging that injuries were caused by an attempted suicide. Discovery should not be permitted on the basis of mere conjecture or speculation; rather, in order to discover confidential communications between the recipient and his psychiatrist, the defendant must make a *prima facie* showing in support of its position. *Grey v. Los Angeles Superior Court*, 62 Cal. App. 3d 698, 703-04, 133 Cal. Rptr. 318, 320-21 (1976).

judicial system may unwittingly become a coparticipant in plaintiff's apparent scheme to harass and defraud the defendants. I cannot concur in such a result.

