No. 2--00--0932

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_________________________________________________________________

THE PEOPLE OF THE STATE OF    ) Appeal from the Circuit Court

ILLINOIS,                     ) of Du Page County.

                              )

Plaintiff-Appellee,      )

                              )      

v.                            ) No. 99--CF--136         

                              ) 

JAMES D. BALTZER,             ) Honorable                  

                              ) George J. Bakalis,

Defendant-Appellant.     ) Judge, Presiding.

_________________________________________________________________

JUSTICE McLAREN delivered the opinion of the court:
 

Defendant, James D. Baltzer, appeals his conviction of and sentence for perjury (720 ILCS 5/32--2(a) (West 1998)).  We affirm as modified.

The following is taken from the record.  The following facts are uncontroverted.  On or about January 11, 1994, defendant borrowed approximately $9,845 from West Suburban Bank.  Defendant provided his 1982 Corvette as security for the loan, and West Suburban Bank held the title to the Corvette.  Defendant then defaulted on the loan and, in response to West Suburban Bank’s request, the circuit court issued an order of replevin against the defendant’s Corvette.  Defendant was served with the order on September 8, 1995.  In November 1995, defendant reported to the police that the Corvette had been stolen in Wisconsin.  On December 22, 1995, the circuit court entered judgment in favor of West Suburban Bank, and a citation to discover assets was issued to enforce the judgment. 

In March 1996, defendant applied for a new title for the Corvette, falsely stating on the title application that the original title, still held by West Suburban Bank, was "missing."  Defendant did not identify West Suburban Bank as a lienholder.  After receiving the duplicate/new title for the Corvette in April 1996, defendant sold the car to Joseph Williams, an attorney who had previously represented defendant.  On October 12, 1996, defendant transferred the title to Williams.  Three months later on January 17, 1997, during the citation proceeding, defendant provided the following sworn testimony, essentially stating that the car had been stolen and then recovered and denying recalling what happened to the Corvette or the title.  The italicized  statements are those alleged to have been perjury in the indictment.  

"Q. What became of the title?

A. For the car?

Q. Right.

A. I said I don’t have it.

Q. Well, when you last had it, where did it go?  Did it get up and walk away?

A. 
I don’t recall.

Q. Did you ever deliver the title to any other person or entity?

A. 
I don’t recall.

Q. Was the title stolen?

A. 
I don’t recall.

Q. Have you ever reported the title stolen?

A. 
I don’t recall.  If it was in the vehicle, perhaps it disappeared with that.
  It has been a while.

Q. Have you ever applied to the Secretary of State for a duplicate or a renewal title?

A. Yes.

Q. When did you do that?

A. I don’t recall.

Q. What calendar year, Mr. Baltzer?

A. I don’t remember." 

As the examination continued, counsel for West Suburban Bank asked defendant additional questions about his application for a duplicate title and how and where defendant recovered the Corvette after it was allegedly stolen.  The following colloquy occurred.  Again, the italicized statements were alleged to constitute perjury.

"Q. But it did come back into your possession; correct?

A. Yes.

Q. How long did you have it?

A. 
I don’t recall exactly.

Q. Was it more than a week?

A. 
Well, I have indicated to you I don’t recall, so I am standing by that answer.

Q. Okay.  Was it more then a month?

A. 
I don’t recall.

Q. Was it more than a day?

A. 
I don’t recall.

Q. What did you do with the vehicle after it came back into your possession?

A. 
That I don’t recall
.

Q. But you no longer have it?

A. That’s correct.

Q. Was it again stolen?

A. No.

Q. Did you sell the vehicle?

A. 
I don’t recall.

Q. Did you transfer possession of the vehicle to some other person?

A. 
I don’t recall.

Q. When did you last have possession of the vehicle?

A. 
I have indicated I don’t recall
.

Q. When was it that you last saw the vehicle?

A. 
That I don’t recall.

Q. How did the vehicle come back into your possession?

A. 
I don’t recall.

Q. What did you do with the vehicle after it came back into your possession?

A. 
That I don’t recall.

Q. How did the vehicle come back into your possession?

A. 
I don’t recall.

Q. When you say it was recovered, it was recovered by some police entity?

A. No.

Q. Who recovered it?

A. I did.

Q. And where did you find it?

A. 
I don’t recall.

Q. Did you drive it after it came into your possession?

A. 
I don’t recall.

Q. What was its condition when you found it?

A. 
I don’t recall.

Q. Was it driveable?

A. 
I don’t recall.

Q. Did it have its license plates still on it?

A. 
I don’t recall.

* * * 

Q. What did you do with the car itself, the actual physical vehicle? Did you sell it?

A. 
I don’t recall.

Q. Do you know who has the vehicle?

A. I don’t.

Q. Do you know to whom you gave the vehicle?

A. 
I don’t recall.

Q. It was not stolen from you again, was it?

A. No.

Q. So you voluntarily gave it up?

A. I didn’t say that.

Q. How did you last give up possession of it --

A. 
I don’t recall
."

On January 22, 1999, the State charged defendant in a five-count indictment with perjury regarding his testimony in the citation-to-discover-assets proceeding.  Counts I and II were dismissed prior to trial.

At the perjury trial, David Orr, vice president of West Suburban Bank, testified that defendant borrowed money from the bank and used his 1982 Corvette as security for the loan.  Defendant defaulted on the loan in 1994 or 1995, and the bank attempted to collect its money from defendant. 

Vince Robertelli, the attorney who represented West Suburban Bank against defendant regarding the loan, testified that the bank obtained a judgment against defendant in the amount of $3,711.37 plus interest, attorney fees, and costs on December 22, 1995.  Robertelli identified documents including the citation to discover assets served on March 15, 1996, the replevin order, and the sheriff’s return of service of the replevin order dated September 8, 1995.  Robertelli stated that at the time defendant was served with the writ of replevin defendant claimed that he did not know the location of the Corvette.  On January 17, 1997, the supplementary proceeding to discover assets was conducted with Judge Lucas presiding.  Judge Lucas swore in defendant. 

Jill Kadlec, a certified court reporter, testified that she recorded and transcribed the proceedings of the hearing for the citation to discover assets in January 1997 and identified State’s exhibit 1 as the transcript from the hearing. 

Joseph Williams, an attorney, testified that he had represented defendant in prior matters and that defendant gave him a 1982 Corvette and its title in exchange for about $8,000 in legal fees.  Williams stated that he did not remember when defendant gave him the Corvette. 

After hearing the testimony and argument, the court found defendant guilty of two counts of perjury.  On July 14, 2000, the trial court sentenced defendant to two concurrent sentences of 30 months' probation and provided the following:

"As a condition of the probation, the Defendant will be sentenced to 90 days of periodic imprisonment.  He shall be released to the SWAP program [Sheriff's Work Alternative Program] only as a condition of that periodic imprisonment.  The conditions of SWAP, the Defendant will be released for no more than 40 hours per week of SWAP, and there will be no furloughs as a condition of periodic imprisonment.

Once the periodic imprisonment has terminated, it will be a condition of the Defendant's probation that he obtain and maintain full-time employment."  

During a July 24, 2000, hearing an assistant State's Attorney told the court that defendant wore jail clothing when in custody for "periodic imprisonment" and, in an order dated July 24, 
nunc pro tunc
 July 14, the court ordered defendant to wear his prison clothing for court appearances.  Defendant filed this timely appeal. The court granted defendant’s motion to stay periodic imprisonment and SWAP, pending the outcome of this appeal.

On appeal, defendant first challenges the sufficiency of the evidence, arguing that the State failed to prove that all of the alleged perjurious statements were material and that defendant made the false statements knowingly.  

We will not set aside a criminal conviction unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of a defendant's guilt.  
People v. Tye
, 141 Ill. 2d 1, 13 (1990).  In viewing the sufficiency of the evidence, we will not retry the defendant.  
People v. Smith
, 185 Ill. 2d 532, 541 (1999).  Instead, we must determine only whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.   
People v. Schmalz
, 194 Ill. 2d 75, 80-81 (2000).  

A person commits perjury:

"[W]hen, under oath or affirmation, in a proceeding or in any other matter where by law such oath or affirmation is required, he makes a false statement, material to the issue or point in question, which he does not believe to be true."  720 ILCS 5/32--2(a) (West 1998).

Here, it is the element of materiality that defendant argues the State failed to prove.  An allegedly perjurious statement is material if it influenced, or could have influenced, the trier of fact in its deliberations on the issues presented to it.  
People v. Acevedo
, 275 Ill. App. 3d 420, 423 (1995).  The purpose of a citation-to-discover-assets proceeding is to give judgment creditors an opportunity to examine the judgment debtor and third parties to discover assets of the judgment debtor that are not exempt from the enforcement of the judgment.  See 735 ILCS 5/2--1402(a) (West 1998).  Section 2--1402 is construed liberally, vesting courts with broad powers to satisfy the judgment with the discovered assets. 
 
City of Chicago v. Air Auto Leasing Co.
, 297 Ill. App. 3d 873, 878 (1998).

In this case, every answer at issue was material to the discovery of assets that could be used to satisfy the judgment against defendant. The Corvette was not only security for the defaulted loan but was an asset that could have been used to satisfy the judgment and had been attached by the court on September 8, 1995.  Defendant claims that certain answers to questions were inconsequential.  In particular, defendant notes his failure to recall whether the title to the Corvette "got up and walked away," how long he had the car after it was recovered, whether he drove the car after it was returned, whether it was damaged or had license plates when it was returned, and whether the title disappeared along with the car when the car was stolen.  Contrary to defendant's assertion, these were not inconsequential details, but would have tended to prove or disprove a key issue in the proceeding, namely, whether defendant had an asset that could have been used to satisfy the judgment or whether defendant had fraudulently transferred the car to his attorney, another third party.  Given this evidence, any rational trier of fact could have found the statements at issue material.

Defendant also contends that the State failed to prove that defendant made the statements believing them to be false.  Given the evidence, any rational trier of fact could have found that defendant deliberately provided false answers in an attempt to hinder West Suburban Bank's attempt to recover the Corvette and to satisfy the judgment.  Although defendant had reported the car stolen only 13 months earlier, defendant testified that he could not recall how or when he recovered it and in what condition the car was in.  Also, although defendant sold the car nine months earlier, defendant testified that he could not remember when he sold the car.  Given this short period of time, the importance of these events, and a lack of any evidence that defendant was mentally challenged, we determine that there was sufficient evidence to prove defendant guilty beyond a reasonable doubt of two counts of perjury. 

Lastly, defendant argues, and we agree, that he is entitled to the good-behavior allowance provided in section 3 of the County Jail Good Behavior Allowance Act (Act) (730 ILCS 130/3 (West 1998)).  The Act provides in pertinent part:

"The good behavior of any person who commences a sentence of confinement in a county jail for a fixed term of imprisonment after January 1, 1987 shall entitle such person to a good behavior allowance ***.  The good behavior allowance provided for in this Section shall not apply to individuals sentenced for a felony to probation *** where a condition of such probation *** is that the individual serve a sentence of 
periodic imprisonment
."  (Emphasis added.)  730 ILCS 130/3 (West 1998).

The State argues that defendant's sentence of imprisonment was periodic because defendant was released for SWAP, and, thus, defendant is not entitled to good-behavior credit.

Periodic imprisonment is defined by section 5--7--1(a) of the Unified Code of Corrections as:

"[A] sentence of imprisonment during which the committed person may be released for periods of time during the day or night or for periods of days, or both ***. Unless the court orders otherwise, the particular times and conditions of release shall be determined by the Department of Corrections, the sheriff, or the Superintendent of the house of corrections, who is administering the program."  730 ILCS 5/5--7--1(a) (West 1998).

The provision also provides:

"(b) A sentence of periodic imprisonment may be imposed to permit the defendant to:

(1) seek employment;

(2) work;

(3) conduct a business or other self-employed occupation including housekeeping;

(4) attend to family needs;

(5) attend an educational institution, including vocational education;

(6) obtain medical or psychological treatment;

(7) perform work duties at a county, municipal, or regional or detention institution or facility;

(8) continue to reside at home with or without supervision involving the use of approved electronic monitoring device, subject to Article 8A of Chapter V; or

(9) for any other purpose determined by the court."  730 ILCS 5/5--7--1(b) (West 1998).

In interpreting a statute, a court begins with its language, which must be given its plain and ordinary meaning.  
People v. O'Brien
, 197 Ill. 2d 88, 90 (2001).  The plain and ordinary meaning of "release" is "to set free from restraint, confinement, or servitude: set at liberty: let go."  Webster's Third New International Dictionary 1917 (1993).  This meaning is supported by the examples provided by the legislature, which include a defendant's freedom from restraint and confinement.  Here, defendant was never "released" for purposes of the statute.  Rather, even while out of the county jail for SWAP, defendant
 was always supervised by the sheriff.  He was never "at liberty."  Although defendant was permitted to leave the jail, it was only under the supervision and control of the sheriff.  Just because defendant was let out of his cell at the jail facility does not mean that he was released.  After all, defendants are let out of their cells to shower, exercise, and go to court, but it would be ludicrous to contend that these activities constitute release for purposes of periodic imprisonment.  Thus, we agree with defendant that he was sentenced to a fixed term and not a periodic term of  imprisonment.  Therefore, he is entitled to earn good-behavior credit provided in section 3 of the County Jail Good Behavior Allowance Act.  730 ILCS 130/3 (West 1998).  We modify the trial court's sentencing order to state that defendant is sentenced to a fixed term of imprisonment with participation in SWAP.  

To support its argument, the State points to section 5--7--1(b)(9), stating that periodic imprisonment may be imposed "for any other purpose determined by the court."  730 ILCS 5/5--7--1(b)(9) (West 1998).  However, the State's interpretation turns the meaning of "release" on its head, rendering the term meaningless.  The term "any other purpose" is limited by the term "release."  The State's interpretation does not recognize this limitation.  Thus, we cannot adopt its interpretation.  See 
People v. Richardson
, 196 Ill. 2d 225, 228 (2001).  

For these reasons, the judgment of the circuit court of Du Page County is affirmed as modified.

Affirmed as modified.

BYRNE and KAPALA, JJ., concur.